**UNITED STATES**

**v.**

**Airman First Class Aldrich C. McCASTLE, FR433–41–6543 United States Air Force.**

**ACM S28779.**

U.S. Air Force Court of Military Review.

Sentence Adjudged 28 Jan. 1993.

Decided 26 July 1994.

Appellate Counsel for Appellant: Major George F. May (argued), Colonel Terry J. Woodhouse, Colonel Jay L. Cohen, and Lieutenant Colonel Frank J. Spinner.

Appellate Counsel for the United States: Major Barnard N. Madsen (argued) and Colonel Jeffery T. Infelise.

Before HEIMBURG, PEARSON, and SCHREIER, Appellate Military Judges.

## OPINION OF THE COURT

HEIMBURG, Senior Judge:

Contrary to his pleas, Airman First Class (A1C) McCastle was convicted by military judge, sitting alone, of use of cocaine. Violation of Article 112a, UCMJ, 10 U.S.C. § 912a (1988). His approved sentence is a bad-conduct discharge and reduction to E–1. A1C McCastle has assigned two errors: the military judge erred in failing to suppress his confession for lack of corroboration and his trial defense counsel was ineffective in failing to move to dismiss the charge and specification as illegally derived from a command-directed urinalysis. We find neither asserted error persuasive and affirm.

### I. The Case

At trial, the evidence against McCastle consisted solely of the testimony of an agent of the Air Force Office of Special Investigations (AFOSI) that McCastle orally confessed to buying and using crack cocaine off-base on 14 November 1992. The same AFOSI agent and a deputy sheriff testified as to corroborating evidence.

During appellate review we permitted appellate defense counsel, over objection by appellate government counsel, to file with this Court an AFOSI investigative report concerning McCastle. This report shows that AFOSI agents first approached McCastle because they learned he was reported "positive" on a command-directed urinalysis. McCastle's confession, according to this report, was to the same use of cocaine reflected by the command-directed urinalysis. There is no mention whatsoever of "urinalysis" in the trial transcript.

### II. Corroboration of the Confession

McCastle's trial defense counsel moved to suppress his confession on the grounds that there was insufficient corroboration. She argued the corroboration evidence at most identified the vehicle mentioned in the confession and connected that vehicle with Ernest Mace, an alleged drug dealer. It did not corroborate McCastle's confession, she maintained, because no witness put him at the scene or at the same place with Ernest Mace; no evidence corroborated a purchase

of cocaine by McCastle; and no evidence supported the conclusion that—assuming McCastle bought crack cocaine—he used it, or even that he purchased it for use.

The military judge did not suppress the confession. He found the corroboration adequate under Military Rule of Evidence (Mil.R.Evid.) 304(g) because it reasonably supported the conclusion that McCastle told the truth at the time he made his statement. We agree with the military judge and adopt his findings of fact. We find the following corroborating evidence persuasive:

1. The place where McCastle admitted to purchasing crack cocaine, an apartment house complex, was well known to local law enforcement authorities as a place where crack cocaine was sold during the time period in question: that is, November 1992.

2. McCastle described the person who sold him crack cocaine as "a large black man" who drove a "red or orange Toyota Celica" with large personalized letters "LOW E" along the side of the body. A man known to local law enforcement authorities as frequently engaged in selling crack cocaine at the apartment house complex, Ernest Mace, met that physical description and frequently drove a red-orange Toyota Celica, the only vehicle in the local area known to have the letters "LOW E" emblazoned along its side. The Celica was registered to Ernest Mace's mother, whose address was the same as that given by Ernest Mace when last arrested.

3. Ernest Mace was frequently observed by local law enforcement authorities and AFOSI agents using the red-orange Toyota Celica described above, either as driver or as passenger, to conduct drug sales. In April 1991 Ernest Mace was arrested for sale or distribution of crack cocaine. He pled guilty in September or October 1991 and served a jail sentence. It was his third arrest since October 1990 for drug sale or distribution or possession.

■ The requirement for corroboration does not mean the prosecution must produce independent evidence of the "corpus delicti" of the confessed offense but only "indepen-

dent evidence which establishes the trustworthiness of the confession." *United States v. Maio,* 34 M.J. 215, 218 (C.M.A.1992); *United States v. Rounds,* 30 M.J. 76 (C.M.A.1990), *cert. denied,* 498 U.S. 846, 111 S.Ct. 130, 112 L.Ed.2d 98 (1990); *United States v. Yeoman,* 25 M.J. 1 (C.M.A.1987); *United States v. Mitchell,* 29 M.J. 854 (A.F.C.M.R.1989), *pet. denied,* 31 M.J. 409 (C.M.A.1990). The quantum of evidence required for corroboration has been described as "slight," *Yeoman,* 25 M.J. at 4, or "very slight." *United States v. Melvin,* 26 M.J. 145, 146 (C.M.A.1988). We find the corroborating evidence sufficient to establish the trustworthiness of McCastle's confession to purchase and use of crack cocaine on 14 November 1992.

### III. Ineffectiveness of Counsel

McCastle asserts his trial defense counsel was ineffective because she failed to move to dismiss the charge as improperly based directly on the results of a command-directed urinalysis.

■ A claim of ineffective assistance of counsel requires that an appellant establish both incompetence and prejudice. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *United States v. Sanders,* 37 M.J. 116, 118 (C.M.A.1993); *United States v. Scott,* 24 M.J. 186, 188 (C.M.A.1987). The Court of Military Appeals has reformulated this test into three parts:

1. Are the allegations made by appellant true; and, if they are, is there a reasonable explanation for counsel's actions in the defense of the case?

2. If they are true, did the level of advocacy "fall[ ] measurably below the performance ... [ordinarily expected] of fallible lawyers"?

3. If ineffective assistance of counsel is found to exist, "is ... there ... a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt?"

*United States v. Polk,* 32 M.J. 150, 153 (C.M.A.1991). We must begin, therefore, by examining the alleged deficiency of McCastle's trial defense counsel. If the allegations

are true, but we find "a reasonable explanation for counsel's actions," our inquiry must cease, for McCastle has failed to establish ineffective assistance of counsel.

Our reading of the trial transcript reflects that the allegation made by McCastle is true: his defense counsel did not move either to dismiss the charge or to suppress the evidence of her client's drug abuse as illegally derived directly from the results of a command-directed urinalysis. In an affidavit submitted by appellate defense counsel, Captain S, the trial defense counsel, has given her explanation why:

> I was aware that the OSI interview took place immediately following their notification that the command-directed urinalysis was positive. I considered, during my research of potential issues in the case, whether I had any issue to raise relating to the command-directed urinalysis. I discovered that the urinalysis could not be used to corroborate A1C McCastle's admissions. However, I discovered no case law, other than United States v. Williams, 35 M.J. 323 (CMA 1992), that addressed the admissibility of the admissions derived from the command-directed urinalysis. As this case appeared to clearly support the admissibility of such evidence, and I could discover no contrary case law, I chose not to raise this as an issue during the court-martial.

■ Appellate defense counsel argued persuasively that United States v. Williams, cited by Captain S, does not support admission of McCastle's confession. They note the regulatory prohibition against use of evidence derived from a command-directed urinalysis contained in Air Force Regulation (AFR) 30–2, ¶ 5–8 (19 August 1988), is grounded in the Fourth Amendment prohibition against "unreasonable searches and seizures." The results of a command-directed urinalysis are not admissible in evidence because the command-directed urinalysis is based on "reasonable suspicion" rather than probable cause and does not fit any of the recognized exceptions to the probable cause requirement of the Fourth Amendment. Mil.R.Evid. 312–314; See Editorial Comments on these rules in S. Saltzburg, L.

Schinasi, D. Schlueter, MILITARY RULES OF EVIDENCE MANUAL (3d. ed. 1991), pp. 282–87 (Mil.R.Evid. 312), 296–300 (Mil.R.Evid. 313), 324–29 (Mil.R.Evid. 314). Appellate defense counsel argue that in this case, unlike Williams, the charge was based on admissions to the same drug use shown by the command-directed urinalysis. They see "no legitimate argument" that the rights advisement given McCastle dissipated the taint of the command-directed urinalysis. Thus, counsel argue, the confession clearly is inadmissible, and Captain S had no rational basis for concluding that the Williams case precluded an attack on the charge.

We agree with appellate counsel for McCastle that Captain S may have misunderstood the impact of the Williams decision. The facts of that case have some similarities to the present case, but there are striking differences. Because the Williams case figures prominently in our discussion of the issue, we will discuss it at some length.

Agents of AFOSI approached A1C Williams, as they did McCastle, because they learned that a command-directed urinalysis he gave before he absented himself without leave tested positive for the presence of a cocaine metabolite. Williams was advised of his rights under Article 31, UCMJ, 10 U.S.C. § 831 (1988), and that he was suspected of a variety of drug offenses. He initially declined to answer questions without a lawyer present but consented to searches of his person, room, urine and baggage. Nothing was found on his person, in his room, or in his baggage, and he said he was unable to provide a urine sample. After the searches, agents readvised him of his rights and questioned him. When he denied using drugs, an agent told Williams they didn't believe him because his prior command-directed urinalysis was positive for a metabolite of cocaine. He responded that the urinalysis could not be used against him for anything but an administrative discharge, which the agents confirmed as true. After further questioning, however, he admitted using cocaine at an off-base party the prior month and during his unauthorized absence earlier that month. Williams provided a urine sample after the interview was over, which tested positive for

cocaine metabolite. 35 M.J. at 324–25. Williams pled guilty conditionally after denial of his motion to suppress all evidence showing his guilt.

The question faced by the Court of Military Appeals was whether Williams' admissions to drug use and consent to urinalysis were tainted because the AFOSI interview itself was "based" on his earlier compelled urinalysis. The Court said:

> In resolving this claim, we note that the results of appellant's August command-directed urinalysis were not proffered as evidence of his guilt of the charged September offenses. Instead, appellant seeks to suppress evidence of the charged offenses which was discovered in his interview by police only after they were informed of the earlier positive results. In this regard, we note the words of the Supreme Court in *United States v. Ceccolini*, 435 U.S. 268, 276, 98 S.Ct. 1054, 1060, 55 L.Ed.2d 268 (1978):

> > Even in situations where the exclusionary rule is plainly applicable, we have declined to adopt a "*per se* or 'but for' rule" that would make inadmissible any evidence, whether tangible or live-witness testimony, which somehow came to light through a chain of causation that began with an illegal arrest. *Brown v. Illinois*, 422 U.S. 590, 603, 95 S.Ct. 2254, 2261, 45 L.Ed.2d 416 (1975).

> Accordingly, to the extent that appellant's targeting argument rests solely on a "but for" analysis, we must reject his claim.

> Nevertheless, appellant also suggests that his decisions to consent to a second urinalysis and to make incriminating statements were more substantially "connected" to the earlier command-directed urinalysis. He implies that his decisions to cooperate with the AFOSI were a direct product of or tainted by the earlier command-directed urinalysis. We disagree.

35 M.J. at 328. The Court concluded by noting five factors which, in its view, "clearly attenuated" any taint from the command-directed urinalysis: Williams was not in custody when interviewed some two weeks after the command-directed urinalysis; prior to interview, he was fully advised of his rights under Article 31 and of the drug crimes he was suspected of; he gave consent to submit a urine sample before being confronted with the results of his earlier, command-directed, test; prior to his admissions he was re-advised of his rights under Article 31; and, although he was told of the results of his command-directed urinalysis, he informed agents, and they agreed, the results of that test could not be used against him except for administrative discharge proceedings. *Id.* at 328.

The allegation of ineffectiveness rests on Captain S's interpretation of the *Williams* decision. McCastle asserts that her mistaken belief that *Williams* precluded an attack on the charge led her to deprive him of adequate representation and fell below the *minimum standard of competency for defense counsel.* Apart from this issue, we conclude, no reasonable argument could be made that Captain S was less than an able and effective advocate.

Captain S, in her affidavit, asserted that she researched the caselaw and found the *Williams* decision and no other precedent on the issue of admissibility of admissions derived from command-directed urinalysis. We do not fault her research, for we have found no other military case on this point, either. However, we are not persuaded Captain S properly understood the precedential value of the *Williams* case, either as to its facts or its holding.

We do not have a record of the facts surrounding McCastle's interrogation because the issue was not litigated at trial. Thus, we do not know what offense AFOSI agents told McCastle he was suspected of, or whether they told him that the results of his command-directed urinalysis could not be used against him. Nevertheless, we do know that McCastle, unlike Williams, was tried for the same use of drugs which the command-directed urinalysis discovered.

As for the law, some of the language in *Williams* indicates to us that this factual distinction may be of critical importance. The Court of Military Appeals, in discussing the effect of AFR 30–2's prohibition against

use of the results of a command-directed urinalysis said this:

> Its prohibitions on use of command-directed urinalysis results are specifically limited. It only precludes use of the results "in any disciplinary action under the UCMJ" or "in separation proceedings" and leaves open the possibility of their use for other law enforcement purposes. It simply does not expressly prohibit OSI or any other police authority from interviewing a servicemember who has come up positive on a command-directed analysis about the circumstances of his drug involvement. In any event, it clearly does not confer upon a servicemember *de facto* or *de jure* immunity for *future* drug offenses which might come to the attention of military authorities as an *indirect* result of an earlier command-directed urinalysis.

35 M.J. at 326 (emphasis supplied).

We thus see enough distinction in the facts of this case to believe an experienced advocate would have argued that *Williams* does not permit McCastle's confession to be used against him; that the taint from the coerced seizure of McCastle's urine could not be attenuated so as to permit this trial.

 Nevertheless, an error in understanding legal precedent is hardly the stuff of which ineffective assistance of counsel is made. Ineffective assistance of counsel is not judged by the standard of what an experienced advocate would do. Rather, it requires errors so serious that counsel was simply not functioning as counsel—*Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *United States v. Sanders*, 37 M.J. 116, 118 (C.M.A.1993); *United States v. Scott*, 24 M.J. 186, 188 (C.M.A.1987)—errors so great that there is no "reasonable explanation" for counsel's actions. *Cf. Polk*, 32 M.J. at 153. The Supreme Court has stated that "a single, serious error" by a defense counsel may be so great that it undermines the reliability of the trial process and results in ineffective assistance of counsel. *Kimmelman v. Morrison*, 477 U.S. 365, 383, 106 S.Ct. 2574, 2581, 91 L.Ed.2d 305 (1986). In *Kimmelman*, however, the trial defense counsel failed to conduct any discovery whatever and, as a result, was

unaware of a potential suppression motion and forfeited it by failing to raise it within a prescribed time before trial. *Id.* at 385, 106 S.Ct. at 2588. The Supreme Court said "the failure to file a suppression motion does not constitute *per se* ineffective assistance of counsel ...," but agreed counsel was ineffective because of his "total failure to conduct pre-trial discovery ... [for] which counsel offered only implausible explanations." *Id.* at 385, 386, 106 S.Ct. at 2588, 2588–89.

We do not find ineffective assistance of counsel here. Captain S performed the functions of a trial defense counsel. She investigated the facts—as shown by her suppression motion based on lack of corroboration—and researched the law. Her belief, however mistaken, that the controlling precedent precluded a motion based on illegally derived evidence does not render her performance of duty legally ineffective.

After examining the record of trial, the assignment of errors, and the government's reply, we conclude that the findings and sentence are correct in law and fact, the sentence is appropriate, and no error prejudicial to the substantial rights of the accused occurred. Accordingly, the findings of guilty and sentence are

AFFIRMED.

Judges PEARSON and SCHREIER concur.