**UNITED STATES**

v.

**Charles W. DAVIS, 467–02–5290, Lieutenant Commander (O–4), U.S. Navy.**

**NMCM 96 00585.**

U.S. Navy–Marine Corps Court of Criminal Appeals.

Sentence Adjudged 22 Sept. 1995.

Decided 30 Dec. 1997.

Richard A. Monteith, Civilian Defense Counsel.

LT Syed N. Ahmad, JAGC, USNR, Appellate Defense Counsel.

LCDR N.B. Jones, JAGC, USN, Appellate Government Counsel.

Before DOMBROSKI, Chief Judge, and SEFTON and OLIVER, Appellate Military Judges.

DOMBROSKI, Chief Judge:

We have examined the record of trial, the 13 assignments of error,[1] and the Govern-

1. I. THE MILITARY JUDGE ERRED TO THE CLEAR PREJUDICE OF THE APPELLANT'S SUBSTANTIAL RIGHTS BY INSTRUCTING THE MEMBERS, OVER APPELLANT'S TIMELY OBJECTION, THAT THEY SHOULD EVALUATE THE DEGREE OF FORCE, THREAT OR INTIMIDATION NECESSARY FOR A FINDING OF GUILT OF EITHER RAPE OR FORCIBLE SODOMY DURING THE CHARGED PERIODS OF TIME IN LIGHT OF THE VICTIM'S "TENDER YEARS."

II. THE MILITARY JUDGE ERRED TO THE PREJUDICE OF THE APPELLANT'S SUBSTANTIAL RIGHTS IN INCORRECTLY ADMITTING EVIDENCE OF UNCHARGED WRONGFUL ACTS WHICH OCCURRED PRIOR TO THE PERIODS CHARGED IN THE SPECIFICATIONS.

III. THE MILITARY JUDGE ERRED TO THE PREJUDICE OF THE SUBSTANTIAL RIGHTS OF THE ACCUSED BY INCORRECTLY HOLDING ADMISSIBLE THE PHOTOGRAPHS FOUND IN APPELLANT'S PICKUP TRUCK ON OCTOBER 5, 1994, AND ALSO THE FRUITS OF THE SUBSEQUENT SEARCH OF APPELLANT'S FORMER HOME IN VIRGINIA BEACH, VIRGINIA ON MARCH 3, 1995.

IV. APPELLANT WAS DENIED HIS SIXTH AMENDMENT RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL.

V. APPELLANT'S SENTENCE TO LIFE IMPRISONMENT IS INAPPROPRIATELY SEVERE.

VI. THE MILITARY JUDGE ERRED WHEN HE DENIED APPELLANT'S CONTINUANCE REQUEST.

VII. THE MILITARY JUDGE ERRED IN DENYING APPELLANT'S CHALLENGES FOR CAUSE.

VIII. THE MILITARY JUDGE ERRED WHEN HE DENIED APPELLANT MOTION'S [sic] TO DISMISS CHARGE I, SPECIFICATIONS 1 AND 2.

IX. THE PLEA TO CHARGE IV, SPECIFICATION 2, IS NOT PROVIDENT BECAUSE ONE CAN NOT BE CONVICTED OF INDECENT LIBERTIES WHEN THE BASIS OF THE CHARGE IS PHYSICAL CONTACT. (References omitted.)

X. THE EVIDENCE IS INSUFFICIENT TO PROVE BEYOND A REASONABLE DOUBT THAT APPELLANT COMMITTED ACTS OF RAPE AND FORCIBLE SODOMY AGAINST HIS STEP–DAUGHTER. (Citation and references omitted.)

XI. THIS COURT IS WITHOUT JURISDICTION TO REVIEW THIS CASE BECAUSE ITS JUDGES, WHEN ACTING IN THEIR JUDICIAL CAPACITY, ARE PRINCIPAL OFFICERS, WHO HAVE NOT BEEN APPOINTED TO THEIR POSITIONS IN ACCORDANCE WITH THE APPOINTMENTS CLAUSE. (Citations omitted.)

XII. APPELLANT'S COURT–MARTIAL LACKS JURISDICTION BECAUSE THE MILITARY TRIAL JUDGE, ACTING IN HIS JUDICIAL CAPACITY, WAS A PRINCIPAL OFFICER, WHO HAD NOT BEEN APPOINTED IN ACCORDANCE WITH THE APPOINTMENTS CLAUSE. (Citations omitted.)

XIII. APPELLANT'S COURT–MARTIAL LACKS JURISDICTION BECAUSE THE CONVENING AUTHORITY, IN HIS CAPACITY AS A CONVENING AUTHORITY, WAS A PRINCIPAL OFFICER, WHO HAD NOT BEEN APPOINTED IN ACCORDANCE WITH THE APPOINTMENTS CLAUSE. (Citations omitted.)

ment's response thereto, and we have considered the points raised in the oral argument of this case. We conclude that the findings and sentence are correct in law and fact and that no error materially prejudicial to the substantial rights of the appellant was committed. We comment on the key issues in the case.

## Background

The appellant, a Navy lieutenant commander, was tried on various dates in July, August, and September 1995 before a general court-martial composed of officer members. Following mixed pleas and a trial on the merits, the appellant was found guilty of two specifications of rape (both specifications alleging acts on divers occasions over time), two specifications of sodomy (both specifications alleging acts on divers occasions over time), and four specifications alleging indecent acts and taking of indecent liberties, in violation of Articles 120, 125, and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 920, 925, 934 (1994)[hereinafter UCMJ]. The victim in all these offenses was the appellant's adopted stepdaughter, J.D., whose date of birth was 10 June 1976, and who was 13 years of age at the earliest time of the charged offenses. Through J.D.'s testimony, the members learned that the sexual abuse started in 1987, when J.D. was 10 or 11 years of age.[2]

The appellant had pled guilty to carnal knowledge of J.D. during the period from June 1991 to June 1992, and to sodomizing J.D. (fellatio) during the periods from June 1991 to June 1992 and from June 1992 to February 1994. He also pled guilty to the indecent acts and indecent liberties specifications, which charged that the appellant fondled J.D.'s breasts and genitals and that he took nude photographs of J.D. The members found the appellant guilty of the rape offenses, and they also found that the sodomy offenses were committed by force and without consent. The members sentenced the appellant to forfeiture of $2500.00 pay per month for 24 months and confinement for life. The convening authority approved the sentence but suspended execution of forfeitures for a period of 24 months contingent on the appellant's maintaining an allotment of all pay and allowances in favor of his wife.

The Government's case rested primarily with the testimony of J.D., the victim. J.D. portrayed a long-running course of sexual abuse at the hands of her stepfather, sometimes accompanied by physical violence or the threat of physical violence, including firearms and threats to kill. From the outset, according to J.D., the appellant mixed psychological abuse with the sexual abuse, telling J.D. that she was bad and that only appellant knew how to make her good, or that the abuse was J.D.'s own fault, and that she would be the one to get in trouble were she ever to disclose the abuse to anyone. J.D. stated that she never consented to any of the sexual abuse.

One of J.D.'s sisters testified for the defense, indicating that from her perspective, J.D. was happy and the best of friends with the appellant. She was unaware that the appellant had ever had sex with J.D. or had sodomized her, or had even spent time alone with her in the home.

The appellant took the stand and testified that in the time after he returned from Desert Storm with mental and physical problems, his relationship with his wife had deteriorated. He further testified that it was then that a sexual relationship with J.D. developed, initiated and instigated by J.D., with whom he fell in love. Appellant denied ever threatening J.D. or using any kind of force.

The offenses came to light at a time when J.D. was out of the house and attending college. The appellant tried to visit J.D. When he threatened her, she called university security personnel, who responded and, after finding a loaded weapon in the appellant's vehicle, arrested appellant. Also in the vehicle were some of the nude photographs of J.D., which were seized. On questioning, J.D. revealed details of being sexually abused.

## Tender Years Instruction

■ The issue presented in the first assignment of error is whether the military judge erred when he gave an instruction on

---

**2.** Admission of this evidence forms the basis for the second assignment of error.

parental compulsion which referred to a time period *prior to* the charged offenses.

The military judge instructed as to the various offenses regarding the issues of force and consent as follows:

The most obvious type [of force] is actual physical force, that is, the application of physical violence or power which is used to overcome or prevent active resistance. Actual physical force, however, is not the only way force can be established. Where intimidation or threats of death, or physical injury make resistance futile, it is said that constructive force has been applied, thus satisfying the requirement of force. Hence, when the accused's actions and words, coupled with the surrounding circumstances, created a reasonable belief in the victim's mind that death or physical injury would be inflicted on her, and that further resistance would be futile, the act of sexual intercourse [or sodomy] has been accomplished by force.

Sexual activity between a parent or a step parent and a minor child is not comparable to sexual activity between two adults. The youth and vulnerability of children, when coupled with a parent or step parent's position of authority, may create a situation in which explicit threats and displays of force are not necessary to overcome the child's resistance. On the other hand, not all children invariably accede to parental will.

In deciding whether the victim did not resist or ceased resistance because of constructive force in the form of parental duress or compulsion, you must consider all of the facts and circumstances, including, but not limited to, the age of the child *when the alleged abuse started,* the child's ability to fully comprehend the nature of the acts involved, the child's knowledge of the accused's parental power, and any implicit or explicit threats of punishment or physical harm if the child does not obey the accused's commands. If [J.D.] did not resist or ceased resistance due to the compulsion or duress of parental command, constructive force has been established and the act was done by force and without consent.

If [J.D.] submitted to the act of sexual intercourse because resistance would've been futile under the totality of the circumstances, because of a reasonable fear of death or great bodily harm, or because she was unable to resist due to mental or physical inability, sexual intercourse was done without consent. If [J.D.] was incapable, due to her tender age and lack of mental development of giving consent, then the act was done by force and without consent. A child of tender years is not capable of consenting to an act of sexual intercourse until she understands the act, its motive and its possible consequences.

In deciding whether [J.D.] had, at the time of the sexual intercourse, the requisite knowledge and mental development, capacity or ability to consent, you should consider all the evidence in the case including, but not limited to, [J.D.'s] age, education and intelligence level *when the sexual conduct between her and the accused began.* If [J.D.] was incapable of giving consent, and if the accused knew or had reasonable cause to know that [J.D.] was incapable of giving consent, the act of sexual intercourse was done by force and without consent.

Record at 498–99, 501–02 (emphasis added).

From the appellant's perspective, the instruction invited the members to determine the issue of consent based in part on uncharged misconduct of the same nature that preceded the charged misconduct.[3]

The Air Force Court of Military Review confronted a very similar issue in *United States v. Hansen,* 36 M.J. 599 (A.F.C.M.R. 1992). In that case, the court wrote:

Although appellant never threatened T in his quest for sex, we believe the evidence proves appellant exerted moral and psy-

---

3. We address the admission of this evidence in our discussion of the second assignment of error and find that the evidence was properly admitted over defense objection. The evidence tended to show that the appellant's sexual abuse of J.D. began at a much earlier age. We presume this misconduct was not charged because it occurred outside the applicable statute of limitations. Art. 43, UCMJ, 10 U.S.C. § 843.

chological force upon T which overcame her will to resist his advances, even after she was beyond her tender years. Appellant, as T's father, was the dominant figure in her life. His improprieties with T started when she was 8 or 9 years old and too young to exercise informed consent or meaningfully resist his actions. As T aged, we believe she acted reasonably under the circumstances to evince her lack of consent....

Having been conditioned to accede to appellant's demands for sex, we believe T continued to labor under appellant's psychological force up until her departure from the home....

*Id.* at 608.

The military judge is responsible for ensuring that the members receive appropriate instructions on findings. RULE FOR COURTS-MARTIAL 920(a), MANUAL FOR COURTS-MARTIAL, UNITED STATES (1995 ed.)[hereinafter R.C.M.]. The military judge clearly understood the relevance of possible parental compulsion when he ruled on the admissibility of the evidence of uncharged misconduct. Record at 231–32. He also recognized that parental compulsion is fact-specific and is not always present in the parent-child relationship. Record at 299–301. J.D. testified that when her father began sexually abusing her, "he said I was bad and that he was going to make me good and then if I—if I said anything it was all my fault anyway and I'd be the one who got in trouble." Record at 387. Later, J.D. testified that over time, "I felt cornered, I felt trapped, I had to do what he said." Record at 392. Significantly, the military judge's instructions did not mandate a finding of parental compulsion, but merely permitted the members to understand the implications of such conduct, were they to find it occurred, on the elements of force and consent. *See United States v. Palmer*, 33 M.J. 7, 9 (C.M.A.1991). We find no error in the military judge's instructions. The first assignment of error is without merit.

4. We note that with the recent addition of Military Rules of Evidence 413 and 414, evidence of the appellant's uncharged misconduct arguably would be admissible, notwithstanding Military

### Evidence of Prior, Uncharged Sexual Abuse

■ Over defense objection and after conducting an evidentiary hearing on the issue, the military judge ruled that the trial counsel could introduce evidence of sexual abuse similar to the charged offenses but preceding in time the charged offenses and falling outside the 5–year statute of limitations. Record at 231–32.

Military Rule of Evidence 404(b) provides: *Other crimes, wrongs, or acts.* Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident....

The military judge conducted a careful analysis of the proffered evidence, utilizing the three-prong test for admissibility contained in *United States v. Reynolds*, 29 M.J. 105, 109 (C.M.A.1989). He concluded that the evidence was relevant and probative on the issues of force and consent, since it tended to show appellant's pattern or plan of parental conditioning of the victim from an early age. This was a relevant consideration on the issue of consent, quite distinct from any consideration of appellant's acting in conformity with his prior misconduct.[4] *See United States v. Castillo*, 29 M.J. 145 (C.M.A.1989). *See also United States v. Palmer*, 33 M.J. 7 (C.M.A.1991); *United States v. Hansen*, 36 M.J. 599 (A.F.C.M.R. 1992); *United States v. Rath*, 27 M.J. 600 (A.C.M.R.1988). We find no error and conclude that the evidence was properly admitted and considered by the trier of fact. The second assignment of error is without merit.

### Effective Assistance of Counsel Issue

In the fourth assignment of error, the appellant claims that his trial defense counsel was ineffective in two particulars. First, he contends that his counsel failed to preserve

Rule of Evidence 404(b), precisely to show propensity to commit the charged offenses. *See* SALTZBURG, SCHINASI, AND SCHLUETER, MILITARY RULES OF EVIDENCE 615 (4th ed., 1997).

issues raised in pretrial motions through use of a conditional plea of guilty instead of an unconditional plea and to preserve a challenge for cause for appellate review. Second, he claims his counsel gave him inaccurate advise regarding his retirement prospects if a dismissal were not adjudged. The appellant claims that this second error led him to ask the members for more confinement, rather than forfeitures or dismissal, to help provide for his family's financial and medical care needs.

■ The competence of defense counsel is presumed. *United States v. Scott*, 24 M.J. 186, 188 (C.M.A.1987). To prevail on a claim of ineffective assistance of counsel, the appellant must establish both a serious deficiency in the counsel's performance and prejudice resulting from that deficiency. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *United States v. Lawson*, 40 M.J. 475 (C.M.A.1994). To satisfy the first requirement, the appellant's allegation of ineffectiveness and the record of trial must contain evidence which, if unrebutted, would overcome the presumption of competence. *United States v. Lewis*, 42 M.J. 1 (1995). Further, counsel's performance is judged on the reasonableness of the counsel's perspective at the time of the alleged deficiency. *United States v. Brothers*, 30 M.J. 289, 291 (C.M.A.1990); *Scott*, 24 M.J. at 188.

■ At the outset, we observe that the issue is ineffective assistance of the trial defense counsel. The fact that a different counsel, including the appellate defense counsel, in consultation with the appellant might have employed a different trial strategy, given the known results of appellant's trial, is of no consequence. We have carefully reviewed this record, and we find nothing in the record to even remotely suggest ineffectiveness of the trial defense counsel. On the contrary, the trial strategy and the defense advocacy throughout were vigorous and highly professional. We see nothing that this defense counsel or any other trial defense counsel might have done that would have lessened the seriousness of the offenses before the court or the persuasive testimony of the victim.

Turning more specifically to the claims of ineffectiveness, the appellate defense brief cites the defense counsel's failure to use a conditional plea of guilty instead of the unconditional plea to preserve issues raised in pretrial motions. *See* R.C.M. 910(a)(2). The appellant's brief also suggests an apparent failure to preserve a challenge for cause against a member because the challenged member was thereafter peremptorily challenged without any qualification that, had the challenge for cause been granted, the defense's peremptory challenge would have been exercised against a different member. *See* R.C.M. 912(f)(4).

■ Nowhere does the appellant make any suggestion that his guilty pleas were improvident. We decline to find a deficiency in the trial defense counsel's performance based on the fact that the appellant's guilty pleas were not conditional. We note that the approval of the military judge and the consent of the Government are required for a conditional plea. The entry of unconditional pleas of guilty was consistent with a defense counsel assessment that the evidence in support of the charges was strong and that the best trial defense strategy was to admit to the existence of a sexual relationship between the appellant and his stepdaughter and contest the issues of force and lack of consent. This was precisely the defense focus at trial, with the appellant testifying that he fell in love with his stepdaughter, with whom he developed a consensual sexual relationship that was instigated in the first instance by the stepdaughter. Unfortunately for the appellant, given the testimony of the stepdaughter which narrated a long history of sexual abuse, the members did not conclude that this relationship was any kind of love affair. Moreover, we have reviewed each of the pretrial issues cited by appellant as not being preserved by appellant's unconditional pleas of guilty, and we find no merit in any of them. Thus, there could be no prejudice to the appellant in any event as to these issues.

■ With regard to the appellant's challenges of members at trial, we again decline to find any ineffectiveness of counsel. Following voir dire, the Government had no

challenges for cause. Defense counsel challenged Commander T and Commander M for cause. Both challenges for cause were denied. Record at 371. Thereafter, the trial counsel exercised a peremptory challenge, and the defense thereupon challenged Commander M peremptorily. We will not presume that just because the defense challenged Commander T for cause, the defense most certainly would have or should have peremptorily challenged Commander T or some other member if the challenge for cause against Commander M had been granted. Particularly with the Government having exercised a peremptory challenge following the denial of the defense challenges for cause, the composition of the court, in terms of both numbers and the character and background of the several members, is very often a matter of close defense strategic tradeoffs. We find no ineffectiveness. Moreover, we conclude that the military judge did not abuse his discretion and properly denied both of the defense challenges for cause.

■ Finally, the appellant contends that his trial defense counsel was ineffective in her advice concerning his retirement prospects, which resulted in longer confinement for no possible benefit. In a post-trial letter, the appellant states that "I did request that more prison time be added to the sentence in exchange for reduced forfeitures and retirement benefits for my family." The appellant goes on to state that he was "shocked" when he received a "life sentence" and was more shocked when he learned that even though the court did not adjudge a dismissal, he would be (and was) administratively processed for discharge and thus denied any

retirement benefits.[5] The appellant concludes as follows:

> If I had been informed that my family benefits could be so easily revoked I would never have considered asking for the request I made. If LCDR ... had informed me that I may not be able to retire to protect my family, even if the members granted my request I would have never made it. I was informed by LCDR ... that I would be allowed to retire if the members did not dismiss me. I had no idea that there was even a possibility that I might not be allowed to retire. I have traded my life for nothing.

Appellant's letter of 14 February 1997.[6]

In the sentencing phase of the trial, the appellant addressed the members in an unsworn statement in which he indicated that he was passed over twice for commander and was eligible for retirement under the Temporary Early Retirement Authority (TERA). He further indicated that he preferred more prison time if it meant less forfeitures. The defense concluded with this question: "Are you asking the members then for more prison time so that they will limit the forfeitures or to not [*sic*] dismiss you so that money can go to your family?" The appellant answered, "Yes." Record at 558. Thereafter, the members adjudged a sentence which included confinement for life and partial forfeitures, but no dismissal. Record at 577.

The appellant was not a seaman recruit, but rather a lieutenant commander with 15 years of service. Without giving any consideration to the affidavit of his two defense counsel, we find quite incredible the appellant's claim that he had no idea that he might not be allowed to retire, if his sentence did not include a dismissal.[7]

---

5. The appellant was a lieutenant commander who had twice failed to promote to the rank of commander. While he had less than 20 years of active service, the appellant was potentially eligible for partial retirement benefits under the Temporary Early Retirement Authority (TERA).

6. Appellant's assertions are disputed in a post-trial affidavit signed by the trial defense counsel and the assistant defense counsel. In the affidavit, both counsel aver that the appellant was fully advised that his retirement was not certain even if a dismissal was not part of the adjudged sentence, and that "the Navy would most certainly make further attempts to discharge him without

retirement benefits." Affidavit dated 10 April 1997. We need not and do not consider the trial defense counsel affidavit in deciding the ineffectiveness of counsel issue.

7. It was common knowledge among affected officers in the Navy that unlike retirement eligibility based on 20 years of active duty, TERA was and remains a highly discretionary program with the service secretary concerned, requiring individual application, individual review, and discretionary approval. TERA was designed to be a targeted personnel management tool to shape the personnel structure of the services. No one was "vested" in any sense.

**714**

Moreover, even if we gave credence to the appellant's asserted lack of awareness of the possibility of administrative processing and assuming, without deciding, that this would constitute deficient performance of the trial defense counsel sufficient to overcome the presumption of competence, we fail to find that the appellant was prejudiced thereby in his unsworn statement or in sentencing.

The appellant doesn't tell us how his unsworn statement might have been different. While the appellant expresses his shock, we conclude that the members imposed a serious sentence for some most serious offenses before the court. Had the appellant said nothing on sentencing, we suspect he would have received the maximum punishment from this court of members. Had he pleaded for reduced forfeitures and no dismissal but had not mentioned confinement at all, we are not persuaded that the confinement portion of the sentence would have been any different. Again, we believe the appellant received confinement for life from these members because of the vile and despicable nature of his offenses, not because of any calculus in his unsworn statement of trading increased confinement for lesser forfeitures and no dismissal. Any nexus between the claimed lack of defense counsel advice or mis-advice as to the possibility of administrative processing and the sentence adjudged is tenuous and speculative.

The unique aspect of this sentence is the fact that the members adjudged only partial forfeitures, subsequently suspended by the convening authority, and no dismissal, presumably in the members' effort to provide some financial relief for the appellant's family. We believe the confinement portion of the sentence reflects the members' grave judgement of the appellant and his offenses. We see no probability whatsoever that this court of members would have adjudged substantially less confinement under any circumstances. The disparity between the trial counsel's request for 40 years confinement and the life sentence adjudged indicates to us that the members clearly were not trading years of confinement for years of forfeitures or a dismissal—they determined that this appellant should be incarcerated for the rest of his life for the offenses he committed.

We conclude that the appellant has failed to show that any claimed deficiency in his counsel's advice, assuming there were any deficiency, prejudiced the appellant in the findings or the sentence in any material way. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). We come to this conclusion without any consideration of the post-trial affidavit submitted by the appellant's two trial defense counsel. Accordingly, despite the urging of the appellant, we find no reason to order a *DuBay* hearing to resolve any factual conflicts in the affidavits. *United States v. Ginn*, 47 M.J. 236 (1997); *United States v. DuBay*, 17 C.M.A. 147, 37 C.M.R. 411, 1967 WL 4276 (1967). The fourth assignment of error is without merit.

### Other Assignments of Error

We find the remaining assignments of error, III and V–XIII, all to be without merit. We specifically find that a sentence of confinement for life and forfeiture of $2500.00 pay per month for 24 months, with execution of the forfeitures suspended by the convening authority, is not an inappropriately severe sentence for the offenses and for this appellant.

### Conclusion

Accordingly, the findings of guilty and the sentence, as approved and partially mitigated on review below, are affirmed.

Judge SEFTON and Judge OLIVER concur.