UNITED STATES, Appellee,

v.

Charles W. DAVIS, Lieutenant
Commander, U.S. Navy,
Appellant.

No. 98–0497.
Crim.App. No. 96–0585.

U.S. Court of Appeals for
the Armed Forces.

Argued May 13, 1999.

Decided Sept. 30, 1999.

COX, C.J., delivered the opinion of the Court, in which SULLIVAN, and EFFRON, JJ., joined. GIERKE and CRAWFORD, JJ., filed dissenting opinions.

For Appellant: *Richard A. Monteith* and *Lieutenant Dale O. Harris,* JAGC, USNR (argued); *Lieutenant Jennifer L. Eichenmuller,* JAGC, USNR (on brief); and *Lieutenant Syed N. Ahmad,* JAGC, USNR.

For Appellee: *Lieutenant William C. Minick,* JAGC, USNR (argued); *Colonel Kevin M. Sandkuler,* USMC, and *Commander Eugene E. Irvin,* JAGC, USN (on brief); *Captain Paul D. Kovac,* USMC.

Chief Judge COX delivered the opinion of the Court.

Appellant, a Navy Lieutenant Commander with over 15 years of service at the time of trial,[1] was convicted at a general court-martial of raping a child; rape (after the child reached age 16); forcible sodomy (2 specifications); taking indecent liberties on a child (2 specifications); and committing indecent acts (2 specifications), all committed against his adopted daughter. He was sentenced by members to confinement for life and partial forfeitures. The convening authority approved the sentence, but suspended the forfeitures. On December 30, 1997, the Court of Criminal Appeals affirmed the findings and sentence. 47 MJ 707.

We agreed to consider two issues:

## I

WHETHER THE MILITARY JUDGE ERRED BY INSTRUCTING THE MEMBERS, OVER APPELLANT'S OBJECTION, THAT THEY SHOULD EVALUATE THE DEGREE OF FORCE, THREAT OR INTIMIDATION NECESSARY FOR FINDINGS OF GUILT OF RAPE OR FORCIBLE SODOMY DURING THE CHARGED PERIODS OF TIME IN LIGHT OF THE VICTIM'S "TENDER YEARS."

## II

WHETHER APPELLANT WAS DENIED HIS SIXTH AMENDMENT RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL DURING SENTENCING.

### FACTS

The victim in this case was appellant's stepdaughter, J.D. The charges arose following appellant's arrest at a time J.D. had already left home to attend college. Appellant tried to visit J.D. at her university. She did not want to see him and called the university security police. The police responded, and after finding a loaded weapon in appellant's vehicle, arrested him. They also found a number of nude Polaroid photographs of his daughter, some of which captured appellant engaging in various sexual acts with her. These photographs were the basis for the charges of committing indecent acts, and taking indecent liberties with a minor, offenses to which appellant pleaded guilty.

### ISSUE I

Appellant asserts that the confusing nature of the degree-of-force instructions with respect to the offenses of rape and forcible sodomy permitted the members to dispense with finding actual force. Such an instruction, combined with the "tender years" instruction, is, according to appellant, wholly unjustified based on the evidence in this case. Appellant's victim, his adopted daughter, was not of tender years, underdeveloped, or unintelligent; and appellant argues that the victim's testimony is of violence and threat rather than parental discipline or au-

---

1. The Staff Judge Advocate's recommendation dated January 23, 1996, represents that appellant's service record indicates that his military service began on October 8, 1978.

thority. Appellant concludes that this error cannot be found harmless.

At trial, appellant moved that any reference to the victim's "tender years, mental capacity, knowledge, or mental development" be removed from the proposed findings instructions. Nonetheless, the military judge denied the motion, concluding that the proposed instruction "for both the rape offenses and the sodomy offenses—the forcible sodomy offenses does properly include the paragraphs that the defense has pointed out, to provide a full framework to the factfinders in this case, ... based upon the evidence that has been presented to this court." The judge gave the instructions as he had initially proposed them in Appellate Exhibit LVII. The text of the challenged instructions, as given to the members, is set forth in the opinion of the Court of Criminal Appeals. *See* 47 MJ at 710.

■ The victim in this case testified to a period of sexual abuse which began when she was approximately 9 years old. While this "uncharged misconduct" of sexual abuse occurred prior to the time encompassed by the charges before the court-martial, it was offered for a limited purpose to show appellant's "plan, design, or scheme." Further, it put the victim's testimony into context that she "felt cornered, ... trapped, [and] had to do what [appellant] said." With the evidence in this posture, it cannot be said that the military judge erred in rendering constructive force/parental control and tender-years instructions as they related to the force elements of both rape and forcible sodomy.

■ We have also reviewed the content of the instructions rendered. Constructive force, acceding to parental will, and tender years were presented as alternatives to actual force, not as an invitation to dispense with the necessity of finding the force element of both rape and forcible sodomy. Thus, we agree with this conclusion of the Court of Criminal Appeals:

Significantly, the military judge's instructions did not mandate a finding of parental compulsion, but merely permitted the members to understand the implications of such conduct, were they to find it occurred,

on the elements of force and consent. *See United States v. Palmer,* 33 MJ 7, 9 (CMA 1991). We find no error in the military judge's instructions.

47 MJ at 711.

## ISSUE II

Appellant alleges his counsel were ineffective with respect to certain advice given in conjunction with sentencing. At the time of trial, appellant had been "passed over twice" for promotion and would have otherwise been eligible to apply for retirement as of December 1, 1994.

The lower court was presented with two conflicting affidavits concerning the effectiveness of counsel's advice to appellant during sentencing. According to appellant, his counsel told him that if the members did not adjudge a dismissal, he would be allowed to retire. "I was informed by LCDR [T] that I would be allowed to retire if the members did not dismiss me. I had no idea that there was even a possibility that I might not be allowed to retire." Appellant's affidavit at 2. Accordingly, in his unsworn statement presented during the sentencing phase of the court-martial, appellant asked the court members not to sentence him to dismissal, so that he could retire and, therefore, be able to support his family. In exchange, he asked the members to sentence him to a more lengthy period of confinement than they otherwise would have. The members apparently complied with the request. However, according to the Government, "appellant was subsequently administratively processed at a Board of Inquiry, received an other than honorable discharge, and was denied any retirement benefits." Answer to Final Brief at 14.

By contrast, defense counsel asserted, through their joint affidavit, that they had advised appellant that "a verdict in his case which did not include a dismissal would not ensure his retirement, but instead would be only the first step in attempting to salvage his family's future." Affidavit of defense counsel at 2.

In *United States v. Ginn*, 47 MJ 236 (1997), this Court required the Courts of Criminal Appeals to order a factfinding hearing when faced with conflicting affidavits. However, "if the [appellant's] affidavit is factually adequate on its face but the appellate filings and the record as a whole 'compellingly demonstrate' the improbability of those facts, the Court may discount those factual assertions and decide the legal issue." *Id.* at 248.

■ The standard of review of a claim of ineffective assistance of counsel is that set out by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *United States v. Scott*, 24 MJ 186 (CMA 1987); *see also United States v. Ingham*, 42 MJ 218 (1995); *United States v. McCastle*, 40 MJ 763 (AFCMR 1994), *aff'd*, 43 MJ 438 (1996). The two-pronged test of *Strickland* requires first, that appellant demonstrate that his counsel's performance was so deficient that he was not functioning as counsel within the meaning of the Sixth Amendment and that counsel's conduct "fell below an objective standard of reasonableness." 466 U.S. at 688, 104 S.Ct. 2052. Second, appellant must show that his counsel's "deficient performance prejudiced the defense." *Id.* at 687, 104 S.Ct. 2052.

■ In deciding the issue of whether appellant was denied the effective assistance of counsel, the Court of Criminal Appeals concluded that it was unnecessary to resolve the conflict in the affidavits on the grounds that

appellant was not a seaman recruit, but rather a lieutenant commander with 15 years of service. Without giving any consideration to the affidavit of his two defense counsel, we find quite incredible the appellant's claim that he had no idea that he might not be allowed to retire, if his sentence did not include a dismissal.

47 MJ at 713.[2] The lower court supported its finding in a footnote, which averred:

It was common knowledge among affected officers in the Navy that unlike retirement eligibility based on 20 years of active duty, TERA was and remains a highly discretionary program with the service secretary concerned, requiring individual application, individual review, and discretionary approval.

47 MJ at 713 n. 7.

The lower court's assertion not only lacks support in the record, but also it is undermined by documents attached to the record reflecting the serious challenge Navy attorneys experienced in interpreting the temporary retirement statute at issue in this case. In short, the court below resolved the matter by imputing to this nonlawyer-appellant a degree of familiarity with personnel law far beyond that exhibited by experienced service attorneys, as reflected in the record of trial and on appeal.

At issue on appeal is appellant's understanding of, and counsel's advice regarding, the Temporary Early Retirement Authority (TERA).[3] TERA supplemented 10 USC § 6323, which provided that "[a]n officer of the Navy ... who applies for retirement after completing more than 20 years of active service ... may, in the discretion of the

2. Notably, despite its protestations that it had not considered defense counsel's affidavit, the lower court summarized the content of that affidavit in a footnote to the opinion. 47 MJ at 713 n. 6.

3. The Temporary Early Retirement Authority (TERA) was enacted on October 23, 1992, by § 4403 of Public Law No. 102–484, 106 Stat. 2702. It is set out in full as a note to 10 USC § 1293.

Section 4403(d) provides: "The Secretary of each military department may prescribe regulations and policies regarding the criteria for eligibility for early retirement by reason of eligibility pursuant to this section.... Such criteria may include factors such as grade, years of service, and skill."

Section 4403(c), entitled "Additional eligibility requirement," lists two requirements not pertinent here.

Pursuant to this authority, NAVADMIN 093/95 was promulgated by message dated 25 Apr 95 (sentence proceedings were in Sept 95), subject: Temporary Early Retirement Program for Officers. The preamble states: "This NAVADMIN announces a temporary early retirement program for eligible officers in FY–96. It is not an entitlement...."

Paragraph 7 provided additional eligibility requirements: "B. An officer who is under adverse disciplinary ... action under the [UCMJ] ... may not apply for early retirement until the action is resolved in favor of the member."

President, be retired . . . ." In order to effect a drawdown in forces, TERA amended the statute to provide for retirement of "officer[s] with at least 15 but less than 20 years of service by substituting 'at least 15 years' for 'at least 20 years' " in the statute.

Correspondence in the record indicates that the Bureau of Naval Personnel wrestled in 1993 with the question of whether the entitlement of officers with 15 years or more of service, who were eligible for retirement under the temporary program, would be treated in the same manner as officers who were eligible for retirement with 20 or more years of service under permanent law.[4] A memorandum by an Assistant Chief of Naval Personnel, dated September 22, 1993, noted that only a "20 year retirement is an entitlement" and that "[a]n officer eligible for 20 year retirement can only be processed to determine retirement grade." The memorandum included a detailed legal analysis which specifically noted the "requirement to retire a retirement-eligible officer in lieu of discharge" under the permanent law.

The memorandum from the Assistant Chief of Naval Personnel provided the Chief of Naval Personnel with two options for members with more than 15, but less than 20, years of service while otherwise eligible for retirement under the temporary program: (1) treat persons facing "potential or pending adverse administration [sic] action" in the same manner as those with 20 or more years of service; or (2) treat the program as unique and "disapprove" requests for retirement by persons with "potential or pending adverse disciplinary and/or administrative action." The Chief of Naval Personnel chose the latter option. Because the decision-making process was generated as a result of a personnel action on another officer, it is likely that it was treated as an internal matter, and there is nothing in the record to indicate that this decision was widely disseminated

within the Navy in a manner that would have come to the attention of appellant. What is most important from the perspective of the present appeal is that the complex legal analysis accompanying the decision and the fact that these matters were treated as options demonstrate that it was unreasonable for the court below to presume that the average officer, particularly an officer outside legal and personnel channels, would have known that retirement-eligible officers with less than 20 years of service would be treated differently from retirement-eligible officers with more than 20 years of service.

The affidavit from trial defense counsel, rather than helping the Government, further undermines the decision of the court below. The affidavit notes that defense counsel had been advised by the Bureau of Naval Personnel that the policy was "pending, largely unclear and subject to change with input from various factions within the Bureau." The affidavit from the Bureau's counsel simply notes that he "cannot remember telling her that the issue was unclear and subject to change," but adds that it took over a year to develop the policy concerning retirement of officers facing adverse or disciplinary action under the temporary program. Under these circumstances, the court below clearly erred in suggesting that the law was so clear that appellant's position is not credible.

The record of trial is consistent with appellant's assertion that he was informed by counsel that he would be allowed to retire if the court did not adjudge a dismissal. Defense counsel's questioning of appellant during his unsworn statement focused largely on the preservation of his retirement benefits:

DC: ... Lieutenant Commander Davis, are you eligible for retirement?

ACCUSED: Yes, I am.

---

4. Subsequent to appellant's court-martial and the attorney-client discussions at issue in the present appeal, new legislative authority was created to permit administrative separation of an officer facing long-term confinement, even if the officer's sentence did not include dismissal. National Defense Authorization Act for Fiscal Year 1996, Pub.L. No. 104–106, § 563(b)(1), 110 Stat.

325 (Feb. 10, 1996) (codified in pertinent part at 10 USC §§ 1161(b)(2) and 1167). This provision was intended to address circumstances under then-existing law in which a person could continue to remain on active duty, drawing pay and allowances, despite a sentence to long-term confinement. *See* S.Rep. No. 112, 104th Cong., 1st Sess. 245–46 (1995).

\* \* \*

DC: Okay. Would you rather have more prison time rather than have money taken from your family?

ACCUSED: Yes, I would.

\* \* \*

DC: If the members did not give you a dismissal so that you could save your retirement, how would you ensure that your family would get that money?

ACCUSED: The same reas—the same way, direct deposit, allotment, or, if necessary, a third deposit to administrate [sic] it for their daily living expenses.

DC: Are you asking the members then for more prison time so that they will limit the forfeitures or to not dismiss you so that money can go to your family?

ACCUSED: Yes, it is [sic].

In his argument, trial counsel also indicated a belief that appellant would be able to retire if a dismissal was not adjudged, stating:

> The government respectfully requests you sentence this accused to 40 years in prison, to be dismissed from the naval service based on his heinous acts. He's retirement eligible and that's unfortunate. His crimes, his pattern of repetitive criminal conduct over almost four years, strips him of whatever right, if you will, he had to retire as a naval officer from the United States Navy ... He must be dismissed from the service for these crimes.

Significantly, trial counsel made no argument to the members that they should dismiss appellant because he might not be able to get his retirement benefits in any case. During her sentencing argument, defense counsel implored the members to "protect [appellant's] family" by sending "him to prison for as long as you think is necessary, add extra years if you—to give the family money." Nothing was said during the sentencing proceeding that indicates appellant was on notice that, despite being adjudged no dismissal, his retirement eligibility would remain in peril.

Considering the record as a whole and considering that even those who administered the TERA program had difficulty in determining whether an officer eligible for retirement under TERA should be treated the same as an officer eligible for retirement under permanent law, it is unreasonable to resolve this matter on the basis that appellant should have had any knowledge about the effect of a conviction on his eligibility. If, as he contends, presumptively competent counsel advised him that he would be allowed to retire if a dismissal was not adjudged, it was reasonable for appellant to rely upon that advice. The Court of Criminal Appeals should have ordered a factfinding hearing to determine what advice appellant was given. The failure to do so was error.

■ We also do not agree with the lower court that even if counsel's performance was deficient, appellant was not prejudiced by his unsworn statement at sentencing. The lower court stated that

> appellant received confinement for life from these members because of the vile and despicable nature of his offenses, not because of any calculus in his unsworn statement of trading increased confinement for lesser forfeitures and no dismissal. Any nexus between the claimed lack of defense counsel advice or mis-advice as to the possibility of administrative processing and the sentence adjudged is tenuous and speculative.

47 MJ at 714. Given the court's description of appellant's acts as "vile and despicable"— and the fact that the members adjudged a sentence that included confinement for life— what is remarkable about this case is the absence of a dismissal from the sentence. The most rational explanation for the members' failure to adjudge a dismissal in this case is that they followed appellant's request to give him more confinement in exchange for no dismissal. Appellant has asserted that if he had known his retirement would not be secure, he would not have made this request. That assertion is sufficient to demonstrate prejudice.

The decision of the United States Navy–Marine Corps Court of Criminal Appeals is set aside. The record of trial is returned to the Judge Advocate General of the Navy for submission to the convening authority to con-

duct a hearing to resolve the disputed questions of fact. *United States v. DuBay*, 17 USCMA 147, 37 CMR 411 (1967).

In the event that the convening authority deems such a hearing impracticable, he or she may order a rehearing on sentence.

Upon completion of the proceedings below, the record of trial shall be sent directly to the Court of Criminal Appeals for review. Thereafter, the record shall be returned to this Court. Art. 67, UCMJ, 10 USC § 867 (1994).

GIERKE, Judge (dissenting):

The fourth principle of *United States v. Ginn*, 47 MJ 236, 248 (1997), controls this case. The record as a whole and the appellate filings " 'compellingly demonstrate' the improbability" of appellant's post-trial assertions.

Appellant says his counsel never mentioned the possibility of an administrative discharge, and that they unequivocally told him he would be allowed to retire if he were not sentenced to a dismissal. In a joint affidavit, his counsel say that they explained the administrative elimination process and that they told him that his retirement eligibility would turn on the Navy's interpretation of the phrase "resolved in favor of the member." The affidavit from Capt Morgan, the Assistant Legal Counsel for Navy BUPERS, corroborates defense counsel's affidavit in some respects. Although Capt Morgan is vague as to the dates on which he consulted with appellant's defense counsel, his affidavit is consistent with and corroborates the statement in LCDR Tinker's affidavit that BUPERS' interpretation of the phrase "resolved in favor of the member" was unclear at the time appellant's court-martial was pending.

I agree with the court below that appellant's assertions are "quite incredible," 47 MJ at 713, for three reasons. First, the court below concluded that the discretionary nature of TERA was common knowledge. The majority dismisses the lower court's conclusion because it "lacks support in the record."

52 MJ at 204. The majority cites no authority for the proposition that a Court of Criminal Appeals may not make a factual finding regarding matters of common knowledge in the Navy. It recites no basis in law or fact for rejecting the court's conclusion, other than to point to the complexity of the issue. The members of the court below were all senior officers on active duty at the time in question and are much better situated than this Court to say what was common knowledge in the Navy at the time. The court below did not dispute that TERA was legally complex; it found only that it was common knowledge that it was discretionary.

Second, appellant had previously applied for early retirement under TERA, indicating that he was generally familiar with the policies and procedures for requesting early retirement under TERA.

Third, I think it incredible that two military lawyers would conduct extensive research and investigation into the applicability of TERA to appellant, and then tell appellant that he could count on retiring if he were not dismissed. Unlike most claims of ineffective representation, appellant does not assert that his lawyers were negligent or incompetent; he asserts that they lied to him.

In my view, it takes more than a bare assertion to impugn the professional competence of counsel. Appellant's counsel had nothing to gain by lying to him. Appellant has everything to gain by this incredible attack on his counsel.

CRAWFORD, Judge (dissenting):

I agree with the dissent of Judge Gierke and write separately to point out pertinent statutory and regulatory provisions. Both regulation and statutes support the advice given to appellant that he might not be allowed to retire even if his sentence did not include a dismissal. Additionally, 10 USC §§ 1161(b)(2) and 1167 (enacted after appellant's trial), and its predecessors, which have existed for tens of years,* permit the Presi-

---

* *Cf. Clinton v. Goldsmith*, 526 U.S. 529, 119 S.Ct. 1538, 1541 n. 1, 143 L.Ed.2d 720 (1999). This

Court lacked jurisdiction to enjoin the President and other military officials from dropping Gold-

dent to drop an officer from the rolls if the member was sentenced to confinement. The statutes are implemented by Naval Military Personnel Manual and Secretary of the Navy Instruction 1920.6A. It is unfortunate that the majority will not give judicial deference to the court below, a factfinding court, Art. 66(c), Uniform Code of Military Justice, 10 USC § 866(c)(1994), as to their finding that it is "incredible [Davis] ... had no idea that he might not be allowed to retire, if his sentence did not include a dismissal." 47 MJ 707, 713. If there is any question regarding implementation of these statutes and the Navy instruction, this Court has the option of remanding the question to the Court of Criminal Appeals, which would be more familiar than this Court with the implementing instructions and regulations.

smith, who was tried in 1994, *id.* at 1541, from the rolls under 10 USC § 1161(b)(2).