**UNITED STATES, Appellee,**

v.

**Myron D. SANDERS, Captain
U.S. Army, Appellant.**

No. 67,411.
CMR 8902717.

U.S. Court of Military Appeals.

Argued Nov. 2, 1992.

Decided June 24, 1993.

For Appellant: *Pedro L. Irigonegaray* (argued); *Elizabeth R. Herbert* and *Captain Michael Huber* (on brief).

For Appellee: *Captain Steven M. Walters* (argued); *Colonel Dayton M. Cramer, Lieutenant Colonel Daniel J. Dell'Orto, Major Kenneth T. Grant* (on brief); *Colonel Alfred F. Arquilla, Captain Timothy W. Lucas, Captain Jonathan F. Potter.*

*Opinion of the Court*

COX, Judge.

Appellant, a nurse-anesthetist, was convicted, contrary to his pleas, of molesting a semi-conscious, post-operative patient.[1] The granted issues question the legal sufficiency of the evidence of appellant's guilt and the adequacy of trial defense counsel's representation.[2] We decide both granted issues against appellant, and we affirm.

I

WHETHER APPELLANT SUFFERED INEFFECTIVE ASSISTANCE OF COUNSEL BECAUSE OF COUNSEL'S FAILURE TO: REASONABLY INVESTIGATE APPELLANT'S CASE; ADEQUATELY PREPARE FOR TRIAL; AND ZEALOUSLY ADVOCATE ON APPELLANT'S BEHALF, CONSIDERING SAID FAILURES SINGLY OR IN CUMULATIVE EFFECT.

1. Appellant was convicted of a single specification of committing an indecent assault, in violation of Article 134, Uniform Code of Military Justice, 10 USC § 934. He was sentenced to be dismissed from the service. The convening authority approved the sentence, and the Court of Military Review affirmed in an unpublished opinion dated September 30, 1991, with one judge dissenting.

2. We granted these issues for review:

## Legal Sufficiency

■ M, the victim, was the 18–year–old daughter of an Army first sergeant. She had undergone a late-night, emergency gall bladder operation at Irwin Army Hospital, Fort Riley, Kansas. According to her testimony, she became aware in the recovery room, while intermittently conscious, that appellant was molesting her on two distinct occasions. She was able to describe the room; appellant's words, appearance, and manner of attire; and her own circumstances with great accuracy. Appellant vehemently denied ever touching M inappropriately. He was the only other occupant in the recovery room during most of M's recovery, and much of this time, he was the only other person on duty on that entire floor of the hospital.[3]

The defense case went beyond a mere denial of the misconduct and encompassed an extensive review of the various drugs and medications given M before, during, and after surgery, and evidence on the effect these drugs might have on a patient's perception and recollection. Specifically, emphasis was placed on the sort of dreams, illusions, and hallucinations sometimes experienced by persons undergoing such medications. Numerous highly qualified experts testified on behalf of the defense—and for the prosecution in rebuttal. The defense also, through expert witnesses, raised the possibility that M, who had recently given birth, may have been superimposing images and memories of that experience onto her gall bladder recovery (*i.e.*, medical personnel checking the dilation of her cervix).

On paper, this would appear to have been a very difficult case for the prosecution to prevail in since, in large part, it boiled down to M's testimony against appellant's; and M was admittedly in and out of consciousness during the recovery process. Though the defense took great pains to point out this prosecution obstacle, the factfinder was nevertheless satisfied, beyond a reasonable doubt, of appellant's guilt.

■ With regard to judging the credibility of witnesses, we well recognize the advantage of the factfinder. Indeed, this Court has no charter whatsoever to assess witness credibility. Art. 67(c), Uniform Code of Military Justice, 10 USC § 867(c) (1989). We may observe, however, that, in addition to presenting its own evidence, the prosecution launched into an intense cross-examination of appellant and the other defense witnesses. In the process, the prosecution developed a number of potential inconsistencies and ambiguities involving appellant's conduct and record-keeping at the time of the alleged offense.[4] What impressions, inferences, and conclusions the factfinders actually drew from this cross-examination cannot be gleaned from the record.

II
WHETHER THE EVIDENCE WAS [LEGALLY] SUFFICIENT TO SUSTAIN A CONVICTION.

3. The surgeons left shortly after concluding the operation. The operating-room nurse readied the operating room for another surgery, then asked appellant if he needed assistance in recovering M. Appellant said he did not, so the operating-room nurse went home. The operating-room technician, who remained on duty, checked in with appellant to see if he needed her assistance. Appellant said he did not, so she left the floor to obtain additional supplies for the operating room. She was off the floor for perhaps half an hour. M's mother, a licensed practical nurse on staff with the hospital, was forbidden to enter the operating/recovery-room area. She waited in a staff lounge at the opposite end of the building, though on the same floor. As the operating-room complex entailed the entire floor of the hospital, and owing to the lateness of the hour, only appellant, M, and M's mother were on that floor of the building for a considerable period of time during M's recovery.

4. Among other possibilities, the direction of this cross-examination implied that appellant may have administered the drug droperidol to M for the purpose of inducing amnesia—not to combat nausea as claimed, but to prevent her from remembering the molestation. Another possible implication was that appellant may have not actually administered droperidol at all but merely claimed to have done so in order to counter any later accusations (droperidol being known to induce dissociation in some cases).

In determining whether evidence is sufficient to sustain a conviction as a matter of law, it is not our task to reweigh the evidence afresh, but to ascertain whether there was "some legal and competent evidence," *United States v. Harper*, 22 MJ 157, 161 (CMA 1986), from which "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt," *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). In the instant case, M's testimony alone supplied that quantum of evidence. The factfinder was not obliged to, and obviously did not, credit appellant's protestations of innocence. Further, the experts' testimony regarding the various properties and possible effects of the drugs and medications was not dispositive, *see United States v. Murphy*, 23 MJ 310, 312 (CMA 1987), and was, in any event, far from uniformly supportive of appellant's position. We hold that the evidence of appellant's guilt on this record was *legally* sufficient to sustain his conviction.

### Competence of Counsel

In *United States v. Scott*, 24 MJ 186 (CMA 1987), we followed the standard of the Supreme Court of the United States for assessing competence of counsel as articulated in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). As we noted in *Scott:*

> In order to prevail on an ineffectiveness of counsel claim, an accused must establish both incompetence and prejudice, as follows:
>
> > First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

24 MJ at 188, *quoting Strickland v. Washington*, 466 U.S. at 687, 104 S.Ct. at 2064.

Before this Court, appellate defense counsel have filed a veritable catalogue of alleged insufficiencies regarding the investigation, preparation, and performance of the trial defense team, which was made up of both civilian and military counsel. The great bulk of this attack involves second-guessing tactical decisions, which we dismiss as mere Monday-morning quarterbacking. After a losing effort, hindsight usually suggests other ways that might have worked better; but that is not the measure of ineffective assistance of counsel.[5] One cannot read this record without

---

5. One strand of appellant's criticism invites attention: It involves the alleged failure of trial defense counsel to investigate and advocate the potential role and side effects of the drug nitrous oxide, which was administered to M during the surgery itself. As noted, however, the defense addressed the side effects of all the drugs administered M, including nitrous oxide—as did the prosecution in rebuttal. As it happens, the witnesses at trial focused more on other drugs administered to M as being more likely candidates for causing hallucinations, if any.

Subsequent to the conclusion of the court-martial, the defense (chiefly through several of its trial experts) has mustered additional literature about the potential side effects of nitrous oxide. Unfortunately for appellant, a review of this literature suggests that much of it underscores the very reasons why the trial witnesses did not consider nitrous oxide to be a principal candidate for causing hallucinations—namely, that its side effects are usually observed when it is used alone, not in conjunction with the heavier forms of sedation incident to major surgery.

Had the information now adduced been of such a nature as to suggest that a miscarriage of justice occurred (*i.e.,* that "[t]he newly discovered evidence, if considered by a court-martial in the light of all other pertinent evidence, would probably produce a substantially more favorable result for the accused"—RCM 1210(f)(2), Manual for Courts–Martial, United States, 1984), the most efficacious procedure would have been to petition for a new trial based on newly discovered evidence. Art. 73, UCMJ, 10 USC § 873; RCM 1210(f)(2). Indeed, we note that many of these scientific articles were available to appellant even before the convening authority's action and were incorporated into a petition for clemency prepared by the same counsel now representing appellant on appeal. Further, it appears that all of the articles were known to appellant and cited to the Court of Military Review (in conjunction with an inadequacy-of-

appreciating the sustained, determined, professional effort made throughout by the trial defense team. Suffice it to say, if this trial defense effort constitutes ineffective assistance, few court-martial convictions can ever be sustained. We have carefully considered all of appellate counsel's allegations of ineffectiveness but remain satisfied that appellant received competent and energetic representation at trial.

The decision of the United States Army Court of Military Review is affirmed.

Chief Judge SULLIVAN and Judges CRAWFORD, GIERKE, AND WISS concur.

representation claim) prior to expiration of the period allotted for new trial petitions (2 years from the date of the convening authority's action). Now, however, it appears that the statutory window for such petitions has passed without a petition having been filed. In view of the general nature of the literature here presented, we are inclined to agree with counsel's implicit recognition that the probable success of such a petition was low.