# UNITED STATES AIR FORCE COURT OF CRIMINAL APPEALS

## UNITED STATES

**v.**

## Senior Airman WILLIAM E. CALLAWAY IV
### United States Air Force

## ACM 38345

## 01 October 2014

Sentence adjudged 27 February 2013 by GCM convened at Ramstein Air Base, Germany. Military Judge: J. Wesley Moore (sitting alone).

Approved Sentence: Dishonorable discharge, confinement for 8 years, forfeiture of all pay and allowances, and reduction to E-1.

Appellate Counsel for the Appellant: Major Christopher D. James.

Appellate Counsel for the United States: Major Roberto Ramírez and Gerald R. Bruce, Esquire.

Before

ALLRED, HECKER and TELLER
Appellate Military Judges

OPINION OF THE COURT

This opinion is subject to editorial correction before final release.

TELLER, Judge:

At a general court-martial comprised of a military judge sitting alone, the appellant was convicted, contrary to his pleas, of engaging in sexual contact with a child under 12 years old, taking indecent liberties with a child, and assault consummated by battery, in violation of Articles 120 and 128, UCMJ, 10 U.S.C. §§ 920, 928.[1] The court

---

[1] The appellant was acquitted of one specification of sexual contact with a child, one specification of sodomy with a child, and found guilty of indecent liberties with a child by exceptions and substitutions. The appellant was charged with violations of Article 120, UCMJ, 10 U.S.C. § 920, as it applied to offenses committed between 1 October 2007 and 27 June 2012.

sentenced him to a dishonorable discharge, confinement for 8 years, forfeiture of all pay and allowances, and reduction to E-1.  The convening authority approved the sentence as adjudged.

The appellant now raises three issues on appeal:  (1) whether the military judge improperly admitted statements of the victim under Mil. R. Evid. 807, (2) whether the evidence was legally and factually insufficient, and (3) whether the appellant received ineffective assistance of counsel.  Finding no error that materially prejudices a substantial right of the appellant, we affirm.

*Background*

In December 2009, a three-year-old child went to Germany for a four-month visit with his mother, who was married to the appellant, as part of an informal custody agreement.  Although the child's parents shared legal custody of the child, he primarily lived in the United States with his father.

When the child returned from Germany on 1 April 2010, his father noticed a large yellow-colored bruise on the child's torso, just below his chest.  At the time, the two were residing with the child's paternal grandmother, who also observed the bruise.  Based on the appearance of the bruise, both adults concluded it was an older bruise that was now healing.  When asked about the bruise, the child told his father and grandmother the appellant punched him.  When the father asked the child's mother about the bruise, she told him that the child must have sustained the bruise when he fell into the arm of a chair during a layover on the return flights from Germany.

Between April 2010 and November 2011, the child made various statements suggesting additional abuse by the appellant.  During that time, the child's father enrolled the child in counseling and persistently contacted military and civilian authorities to pursue a criminal complaint against the appellant.  At first, the investigations failed to substantiate any allegations against the appellant.  Over time, the child's additional disclosures, behavioral changes, and age-inappropriate sexual conduct led to a substantiated complaint and the charges in this case.  Most of the child's disclosures were made by the child to his father and paternal grandmother, but the child also made statements indicating abuse to his counselor and his father's girlfriend.

The accounts of the child's out-of-court assertions are somewhat complicated by potential bias.  The appellant and the child's parents all attended the same high school. The child's parents dated for a year and a half, including periods of time when he resided with her family.  About three months after the child's mother found out she was pregnant, she ended that relationship and soon began a romantic relationship with the appellant. This rivalry for the woman's affection continued after the child's birth.  The child's father was also unhappy that the child was away during the visits to Germany and was angry when he heard the child refer to the appellant as "Daddy William."

On 17 November 2012, the now six-year-old child remotely testified at the Article 32, UCMJ, 10 U.S.C. § 832, investigation of the charges in this case. The testimony was recorded, and a verbatim transcript was produced. His testimony at the hearing was equivocal—saying at first that the appellant never touched the child's penis or exposed himself, then saying that he did not remember, and later responding that he worried about the appellant being around his half-brother because the appellant might punch that child in the stomach. Later in his Article 32, UCMJ, testimony, the child said it was hard to talk about the appellant, testifying "Because it's just really hard because sometimes it feels like you have to keep it in you. . . . Just all the stuff that he did to me."

At trial in February 2013, the child testified only briefly. Appearing by closed circuit television, the child testified that he did not remember anything that happened in Germany related to the charges. Even when counsel specifically referenced his prior statements that the appellant punched him, the child testified that he could not remember.

The Government then sought to offer evidence of several of the child's prior out-of-court statements through his father, his father's girlfriend, and his paternal grandmother. The Government gave the required pretrial notice of intent to offer the child's statements under Mil. R. Evid. 807. The military judge deferred a final ruling on the admissibility of the statements until he had heard the testimony of the child and the witnesses who allegedly heard the out-of-court statements. After hearing that testimony and argument from counsel, the military judge issued a written ruling, finding some of the child's statements to be admissible and excluding others. In addition to the child's statement about the cause of the bruise the father observed on 1 April 2010, the military judge admitted statements arising from four other incidents, as described below.

During late May 2010, the child spontaneously told his father that the appellant touched his genitals. The military judge described the circumstances in his findings of fact. After the child fell asleep on the couch next to him, his father reached out and touched the child in an attempt to prevent him from rolling off the couch. This startled the child out of his sleep and he said "Don't touch me there. Daddy William touches me there and I don't like it." As he made this statement, the child pulled aside his blanket and pointed to the front of his pants at his penis. The child's paternal grandmother was present during this incident and heard the child make this statement.

The next incident arose after the child continued to have trouble sleeping during the summer of 2010. According to his father, the child said he was afraid people were going to come into his room with masks on. The father testified the child told him the appellant came into his room with a mask on and touched him on his "privates." The father testified that when he asked the child's mother about this, she at first denied the appellant went into the child's room with a mask but later asserted that he did so only to get the child and their other son to stay in bed.

While visiting his paternal grandmother around Easter of 2011, the child spontaneously told her the appellant "used to make me play games with him." She told the child she was sorry that happened, and that he was safe now, as she had been advised by the child's counselors to use that response to avoid exacerbating any harm or making promises she could not keep. The child responded: "William used to make me watch when he did this." The grandmother testified that as the child made this statement, he joined his fingers and thumb together in a circle and moved them in an up-and-down motion.

In November 2011, the child's father entered the child's bedroom to find him with his pants down, allowing one of the family dogs to lick his genitals. When asked where he learned that behavior, the child told his father that the appellant had—in the father's words—"put his mouth there."

The military judge also found admissible the child's initial denial of sexual abuse to a state child abuse investigator. Shortly after the 2010 Memorial Day incident described above, an investigator came to the father's home to interview the child. The first time the investigator asked the child if anyone had touched him between the legs, the child told him no. Later in the interview, the child told the investigator that the appellant did touch him inappropriately. The military judge found the initial denial to be constitutionally-required impeachment evidence and considered it along with the incriminating statements.

In addition to the circumstances directly surrounding these out-of-court assertions, the military judge detailed additional facts related to the statements in his written ruling. He found that the testimony showed the child's personality was dramatically different after his visit to Germany, including "fear of the dark, problems with incontinence and bedwetting, increased startle response, increased anger and aggression, age-inappropriate sexual behavior and sexual knowledge, and spontaneous fits of crying." The military judge additionally found that the three adults all testified to seeing a bruise near the child's sternum. The military judge also noted that the testimony indicated the appellant did enter the child's room while wearing a mask. Although the military judge included these circumstances in the "facts" section of his ruling, he phrased them as summaries of witness testimony.

The military judge then found the appellant guilty of aggravated sexual contact by touching the child's penis, taking indecent liberties with the child by having the child watch him masturbate, and assaulting the child by striking him on the chest. The military judge found the appellant not guilty of committing sodomy with the child.

*Residual Hearsay*

The appellant contends that the military judge abused his discretion by admitting the child's pretrial hearsay statements from the incidents described above under Mil. R. Evid. 807.

The residual-hearsay exception is "intended to apply [only] to highly reliable and necessary evidence." *United States v. Wellington*, 58 M.J. 420, 425 (C.A.A.F. 2003) (quoting *United States v. Giambra*, 33 M.J. 331, 334 (C.M.A. 1991)). It permits the introduction of hearsay testimony not covered by Mil. R. Evid. 803 or Mil. R. Evid. 804, where, given "equivalent circumstantial guarantees of trustworthiness," the military judge determines that:

> (A) the statement is offered as evidence of a material fact;
> (B) the statement is more probative on the point for which it is offered than other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence.

Mil. R. Evid. 807.

Courts have referred to the "equivalent circumstantial guarantees of trustworthiness" as the "reliability" prong, the requirement of subsection (A) as the "materiality" prong, and the requirement of subsection (B) as the "necessity" prong. *United States v. Kelley*, 45 M.J. 275, 280–81 (C.A.A.F. 1996).

We review a military judge's ruling with regard to Mil. R. Evid. 807 for an abuse of discretion. *United States v. Czachorowski*, 66 M.J. 432, 434 (C.A.A.F. 2008). "We accord a military judge 'considerable discretion' in admitting evidence as residual hearsay." *United States v. Donaldson*, 58 M.J. 477, 488 (C.A.A.F. 2003) (quoting *Kelley*, 45 M.J. at 281–82). "Findings of fact are affirmed unless they are clearly erroneous; conclusions of law are reviewed de novo." *Czachorowski*, 66 M.J. at 434 (citing *United States v. Rader*, 65 M.J. 30, 32 (C.A.A.F. 2007)).

The military judge accurately summarized the legal requirements for admissibility in his written ruling. However, although included in the facts section of the ruling, the military judge's description of certain external corroborating circumstances did not constitute findings of fact, but rather, summaries of testimony.

As such, the matters as described by the military judge do not receive the same deference as a finding of fact.[2]  *See United States v. Flesher*, 73 M.J. 303, 312 (C.A.A.F. 2014) (less deference given where the military judge did not make factual findings).

The testimony of the adult witnesses with regard to the personality changes and bruising was consistent with each other.  The defense elicited general bias evidence on cross-examination but did not challenge any of the facts related to specific personality changes.  Trial defense counsel actually elicited further testimony on cross-examination about other aggressive behaviors the child exhibited after his return from Germany.  Similarly, on cross-examination of the Government expert witness, trial defense counsel declined to challenge the factual basis of changes in the child's personality, but rather, elicited alternative explanations for such changes.  Accordingly, we accept as fact the existence of a yellowish bruise on the child's chest and that the child did exhibit personality changes as summarized by the military judge.  We also accept as fact the assertion that the appellant entered the child's room wearing a mask as trial defense counsel did not object to this testimony nor address it on cross-examination.

As a threshold matter, we find that the military judge reasonably found that the statements he admitted under Mil. R. Evid. 807 were material and that admission served both the general purposes of the Military Rules of Evidence and the interests of justice.  The statements at issue directly related to a charged offense and were therefore material.  Although the appellant accurately points out an unfortunate reference by the military judge to "slavish enforcement of artificial rules," we find that, in context, the comment did not manifest disregard of the law.  Absent any specific misapplication of the law, we will not find an abuse of discretion on the basis of that comment alone.  We also find the notice requirements of Mil. R. Evid. 807 were met with regard to all of the statements at issue.

In light of those findings, we proceed to the reliability and necessity analyses for each of the child's admitted statements.

### 1.  Statement that the Appellant was the Cause of the Bruise

The military judge did not abuse his considerable discretion in admitting the testimony indicating the child told his father and grandmother the appellant punched him, causing the bruise on the child's chest.

---

[2]  We echo our fellow service court's admonition in *United States v. Gore*—"in making such findings, a military judge should answer the question, 'What happened?' rather than the question, 'What did the witness say?'" *United States v. Gore*, 58 M.J. 776, 784 n.3 (N.M. Ct. Crim. App. 2003), *rev'd on other grounds*, 60 M.J. 178 (C.A.A.F. 2004); *see also United States v. Reinecke*, 30 M.J. 1010, 1014 (A.F.C.M.R. 1990), *rev'd on other grounds sub nom.*, *United States v. Strozier*, 31 M.J. 283 (C.M.A. 1990) ("Without a proper statement of essential findings, it is very difficult for an appellate court to determine the facts relied upon, whether the appropriate legal standards were applied or misapplied, and whether the decision amounts to an abuse of discretion or legal error.").

The military judge's reliability analysis considered spontaneity, the absence of suggestive questioning, and the child's mental state close in time to the event itself. The existence of the bruise itself constituted other corroborating evidence. *See Donaldson*, 58 M.J. at 488 (In determining whether a statement is supported by circumstantial guarantees of trustworthiness, a court looks to a "number of indicia of reliability," which may include, among other things, the mental state and age of the declarant, the spontaneity of the statement and the circumstances under which the statement was made, the use of suggestive questioning prior to the statement and whether the statement can be corroborated.). The military judge's necessity analysis was not as straightforward. This prong of the admissibility requirement "balances the probativeness of available evidence, and requires the proponent of the evidence to show he could not obtain more probative evidence despite 'reasonable efforts.'" *Czachorowski*, 66 M.J. at 435.

In his initial written ruling, the military judge commented on the fact that, although the defense argued the Article 32, UCMJ, testimony of the child was more probative on this point, neither party had offered that testimony for his consideration. He later clarified on the record that he did consider the Article 32, UCMJ, testimony during his reconsideration of this issue prior to entering findings.[3] He expressly found on the record that the "Article 32 testimony indicated a muddled recollection that was affected by the passage of time and numerous other circumstances, such that it was not as reliable as the information presented by trial counsel on the issue." The Government expert, for example, testified about his concern with the numerous forensic interviews the child had undergone between the alleged misconduct and the Article 32, UCMJ, hearing. The expert also expressed concern that in the child's Article 32, UCMJ, testimony, the child spontaneously mentioned recently seeing his mother. The expert testified that, although inconclusive on its own, such spontaneous references to a person who expressed disbelief in a child's disclosures of abuse could show that the child was susceptible to minimizing the offenses in his own mind. The military judge alluded to these concerns in his written ruling, observing that the hearsay statement was much closer in time and noting the "numerous opportunities for contamination" presented by the number of investigators that had interviewed the child.

Given the totality of the evidence presented on this issue, we find the military judge did not abuse his discretion by determining that this statement met the necessity and reliability prongs of Mil. R. Evid. 807.

---

[3] This first approach, not considering the Article 32, UCMJ, 10 U.S.C. § 832, testimony because it had not yet been offered would have been error. The military judge must balance the probative value of the declaration against any other evidence the proponent could reasonably obtain through other means, not just the evidence available at the trial. *United States v. Czachorowski*, 66 M.J. 432, 437 (C.A.A.F. 2008).

## 2.  The Memorial Day Weekend Statement that the Appellant Touched the Child's Penis

The military judge did not abuse his considerable discretion in admitting the child's statement to his father while pointing at his penis, "Don't touch me there.  I don't like that.  Daddy William touches me there."

The military judge's reliability analysis properly considered the child's mental state, the spontaneity of the statement while the child was in an excited statement based on a stimulus that brought about a recollection of the disclosed event, and the lack of any motive for the child to fabricate the assertion.  *See Donaldson*, 58 M.J. at 488.  While the military judge did not incorporate the child's general behavioral changes in this section of the ruling, this court finds that the personality changes the child displayed upon his return from Germany corroborate the hearsay statement.  The child's aggressive response upon having been unexpectedly touched correlates to the overall increase in anger and aggressive behavior his family described.

The military judge also balanced the probative value of this statement against the value of the Article 32, UCMJ, testimony, noting the shorter time elapsed between the alleged misconduct and the statement, and the child's lack of any detailed recollection at the Article 32, UCMJ, hearing.

## 3.  The Statement that the Appellant Entered the Child's Room Wearing a Mask and Touched His Penis

The military judge did not abuse his considerable discretion in admitting the child's statement to his father that the appellant entered the child's room wearing a mask and touched his penis.

The military judge's reliability analysis considered the spontaneity of the statement and the unusual subject matter for a three-year-old child.  He also considered the significant external corroborating evidence provided by the mother's statement that the appellant would enter the child's room wearing a mask when the children would not stay in their room.  While the military judge did not include it in this section of the ruling, this court notes the additional corroborating value of the child's difficulty sleeping.  The circumstances supporting this admission are less conclusive than the previous two.  The testimony about the assertion is less specific, depriving the court of the type of evidence of agitated mental state and lack of motive to fabricate that was apparent in the previous two assertions.  However, in light of the considerable discretion we accord the military judge, the record does constitute a sufficient basis to sustain his finding of reliability.

The military judge also adequately balanced the probative value of this statement against the value of alternative evidence, noting the statement was made closer in time to the event and "prior to the witness forgetting many of these facts."

### 4. The Statement that the Appellant Made the Child Watch while the Appellant Masturbated

The military judge did not abuse his considerable discretion in admitting the child's statement to his paternal grandmother that "William used to make me watch when he did this," including the non-verbal assertion of moving his joined fingers and thumb in an up-and-down motion as if masturbating.

The military judge's reliability analysis recounted only the "level of sexual knowledge one would not expect of a child of [the child's] tender years." In addition, the court notes the spontaneity of the statement, the lack of motive to fabricate, and the lack of any suggestive questioning that would explain the very specific non-verbal assertion imitating masturbation. We concur with the military judge that the reliability test was met in this instance.

Although the military judge's ruling was scant on the necessity prong, we find it sufficient in light of his other analysis. The judge's ruling cited only "that it was made prior to the fading of [the child's] memory." Although he did not recite that he balanced the probative value of the declaration with the Article 32, UCMJ, testimony, his analysis on this statement was set out near the end of a list of 10 hearsay assertions, which all required a similar analysis. While an explicit account of his balancing would have made a more complete record, we read the military judge's language mirroring his analysis in the previous sections to mean that he engaged in a similar analysis for this statement but recounted it in abbreviated form in order to make his ruling more concise. We also note that his written ruling was supplemented by his ruling from the bench that detailed that he did consider the Article 32, UCMJ, testimony in his Mil. R. Evid. 807 analysis and found its probative value severely undermined by the passage of time and intervening counselling and interviews.

### 5. The Statement that the Appellant put His Mouth on the Child's Genitals

Despite the lack of a comprehensive discussion in the written ruling or on the record, we find that the military judge did not abuse his considerable discretion in admitting the child's statement to his father that "William had put his mouth there," which, in context, asserted that the appellant placed his mouth on the child's genitals.

The military judge's written reliability analysis cited only the age-inappropriate sexual knowledge reflected in the child's assertion.

The child's apparent embarrassment when discovered by his father raises the possibility that the child had a motive to fabricate this statement that the military judge did not consider in his written ruling. This possibility was addressed by the Government in direct examination of their expert psychologist. When asked if the child likely had the cognitive development to "shift blame as a result of being caught in play," the expert gave his opinion that children like this one generally do not. He illustrated with an example of a child being asked about a missing cookie. The expert testified that very young children are more likely to simply deny taking the cookie rather than make the cognitive leap to providing an alternative explanation. The court finds that illustration inapposite in this case because the father asked the child "where he had learned that behavior"—an inquiry that invited a blame-shifting answer.

This court must accordingly decide whether the failure of the judge to consider the child's motive to fabricate constituted an abuse of discretion. For the ruling to be an abuse of discretion, "it must be more than a mere difference of opinion; rather it must be arbitrary, fanciful, clearly unreasonable or clearly erroneous." *United States v. Brown*, 72 M.J. 359, 362 (C.A.A.F. 2013) (quoting *United States v. Collier*, 67 M.J. 347, 353 (C.A.A.F. 2009)). We are aware of no case that establishes factors that affirmatively must be considered by the military judge in evaluating reliability under Mil. R. Evid. 807. *Cf. Donaldson*, 58 M.J. at 488 (factors "may include" mental state, spontaneity, suggestive questioning and corroboration); *Kelley*, 45 M.J. at 281 (military judge "may consider" spontaneity, consistent repetition, mental state, motive to fabricate, and use of age-inappropriate language). Absent such a list, the failure to consider motive to fabricate is not clearly erroneous but may be an abuse of discretion if it is arbitrary or clearly unreasonable. The Court of Appeals for the Armed Forces faced a similar question in *Donaldson*. In that case, our superior court reviewed a decision to admit a child's statements as residual hearsay after the lower court failed to consider as a potential motive to fabricate that an alleged child victim's "recollection of the events could have been colored by" seeing her mother's emotionally-charged conversations with a psychologist, an investigator and the alleged perpetrator's girlfriend. *Donaldson*, 58 M.J. at 489. The court then applied the considerable discretion standard articulated in *Kelley* and found the military judge had met that standard.

We do the same here. Considering all the indicia of reliability pertaining to the child's statement, the potential motive to fabricate was not so significant as to overwhelm the other factors. As the military judge noted, the idea that the appellant might put his mouth on the child's genitals is not age-appropriate knowledge for a three year old who had not been subjected to abuse. Second, the statement uses age-appropriate language to describe the event. Had the statement been coached, one would expect a more adult description of the conduct than "put his mouth there." The statement was not spontaneous, but also, not the result of suggestive questioning. The father's question invited a blame-shifting answer, so one would expect the child to name someone, but the question did not invite the additional description of the appellant placing his mouth on the

child's genitals. Overall, those two factors are neutral. The external corroborating evidence supports an inference of reliability. The conduct itself of allowing the dog to lick his genitals is so unusual that it suggests that the child had previously experienced something similar. In light of all of the evidence, the military judge's finding that the statement had equivalent circumstantial guarantees of trustworthiness was not arbitrary or clearly unreasonable. Accordingly, we find that the military judge did not abuse his discretion in finding this statement by the child to be reliable.

In the judge's necessity analysis, he considered that the statement was "spontaneously recalled prior to the point at which [the child's] memory began to fade." We incorporate our analysis above that this abbreviated explanation must be read in the context of the military judge's analysis of the other similar statements and his overall assessment of the Article 32, UCMJ, testimony. The military judge's finding that the child's hearsay statement was more probative than other reasonably obtainable alternatives was not an abuse of discretion.

Even if we were to find the military judge abused his discretion with regard to this statement, we would find any error harmless.

> This Court evaluates claims of prejudice from an evidentiary ruling by weighing four factors: "(1) the strength of the Government's case, (2) the strength of the defense case, (3) the materiality of the evidence in question, and (4) the quality of the evidence in question. We apply the same four-pronged test for erroneous admission of government evidence as for erroneous exclusion of defense evidence."

*United States v. Hall*, 66 M.J. 53, 54 (C.A.A.F. 2008) (quoting *United States v. Kerr*, 51 M.J. 401, 405 (C.A.A.F. 1999)). The child's statement was material only to the charge of sodomy, of which the appellant was found not guilty. Accordingly, we find that the statement did not have a substantial influence on the findings adverse to the appellant and that any error was harmless.

*Legal and Factual Sufficiency*

The appellant further argues that the evidence was legally and factually insufficient to support his conviction. We review issues of factual and legal sufficiency de novo. *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002).

"The test for legal sufficiency of the evidence is 'whether, considering the evidence in the light most favorable to the prosecution, a reasonable factfinder could have found all the essential elements beyond a reasonable doubt.'" *United States v. Turner*, 25 M.J. 324 (C.M.A. 1987), *quoted in United States v. Humpherys*, 57 M.J. 83, 94 (C.A.A.F. 2002). The term reasonable doubt does not mean that the evidence must be

free from conflict. *United States v. Lips*, 22 M.J. 679, 684 (A.F.C.M.R. 1986). "[I]n resolving questions of legal sufficiency, we are bound to draw every reasonable inference from the evidence of record in favor of the prosecution." *United States v. Barner*, 56 M.J. 131, 134 (C.A.A.F. 2001) (citing *United States v. Rogers*, 54 M.J. 244, 246 (C.A.A.F. 2000)).

The test for factual sufficiency is "whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, [we are] convinced of the [appellant]'s guilt beyond a reasonable doubt." *Turner*, 25 M.J. at 325, *quoted in United States v. Reed*, 54 M.J. 37, 41 (C.A.A.F. 2000). In conducting this unique appellate role, we take "a fresh, impartial look at the evidence," applying "neither a presumption of innocence nor a presumption of guilt" to "make [our] own independent determination as to whether the evidence constitutes proof of each required element beyond a reasonable doubt." *Washington*, 57 M.J. at 399. Our assessment of legal and factual sufficiency is limited to the evidence produced at trial. *United States v. Dykes*, 38 M.J. 270, 272 (C.M.A. 1993) (citing *Turner*, 25 M.J. at 325).

Having concluded that the military judge did not abuse his discretion in admitting the child's hearsay statements, we are convinced that the evidence was factually sufficient to convict the appellant. First, after making allowances for not having observed their demeanor, we find that the witnesses' testimony recounting the child's statements about the source of the bruise, the touching of the child's genitals, and the appellant masturbating in front of the child was credible. The testimony was logically consistent from witness to witness and recounted age-appropriate descriptions and non-verbal assertions. The testimony describing the behavioral changes was also consistent and credible.

Moreover, we are convinced that the child's hearsay statements related to those three offenses were credible. He described and mimicked conduct outside the normal experience of children his age who have not been subjected to sexual abuse. The spontaneity of the statements, coupled with the age-appropriate descriptions, suggest that they were not the result of coaching. The Government expert testified that the behavioral changes the child exhibited were consistent with the types of abuse alleged. His statements were corroborated by other evidence, including the bruise and the appellant's use of a mask.

As a whole, we find the evidence to be convincing, beyond a reasonable doubt, as to each element of the offenses of which the appellant was convicted. We also find the evidence legally sufficient to sustain the convictions. Viewing the evidence in the light most favorable to the Government would leave us even more convinced of the truth of the child's statements and of the appellant's guilt.

*Ineffective Assistance of Counsel*

The appellant also argues that his trial defense counsel were ineffective by failing to cross-examine the father on specific additional matters and by failing to interview and call a particular witness to testify about the appellant's home life in Germany.

This court reviews claims of ineffective assistance of counsel de novo. *United States v. Mazza*, 67 M.J. 470, 474 (C.A.A.F. 2009). When reviewing such claims, we follow the two-part test outlined by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). *See United States v. Tippit*, 65 M.J. 69, 76 (C.A.A.F. 2007). Our superior court has applied this standard to military courts-martial, noting that "[i]n order to prevail on a claim of ineffective assistance of counsel, an appellant must demonstrate both (1) that his counsel's performance was deficient, and (2) that this deficiency resulted in prejudice." *United States v. Green*, 68 M.J. 360, 361 (C.A.A.F. 2010) (citing *Strickland*, 466 U.S. at 687; *Mazza*, 67 M.J. at 474).

To meet the deficiency prong, the appellant must show his trial defense counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. The prejudice prong requires the appellant to show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

In doing so, the appellant "must surmount a very high hurdle." *United States v. Moulton*, 47 M.J. 227, 229 (C.A.A.F. 1997) (citing *Strickland*, 466 U.S. at 689). This is because counsel are presumed competent in the performance of their representational duties. *United States v. Anderson*, 55 M.J. 198, 201 (C.A.A.F. 2001). This presumption is rebutted only by "a showing of specific errors made by defense counsel that were unreasonable under prevailing professional norms." *United States v. Davis*, 60 M.J. 469, 473 (C.A.A.F. 2005). "[S]econd-guessing, sweeping generalizations, and hindsight will not suffice." *Id.* (citations omitted).

Accordingly, judicial scrutiny of a trial defense counsel's performance must be "highly deferential and should not be colored by the distorting effects of hindsight." *United States v. Alves*, 53 M.J. 286, 289 (C.A.A.F. 2000) (citing *Moulton*, 47 M.J. at 229); *Strickland*, 466 U.S. at 689 ("Judicial scrutiny of counsel's performance must be highly deferential [because] [i]t is all too tempting . . . to second-guess counsel's assistance . . . after it has proved unsuccessful . . . ."). As an appellate court, we will not second-guess reasonable, albeit unsuccessful, tactical decisions by trial defense counsel. *See United States v. Sanders*, 37 M.J. 116, 118–119 (C.M.A. 1993).

Responsive declarations provided by both trial defense counsel pursuant to an order from this court address the defense's overall goals in cross-examining the child's father. This included showing the father's bias towards, and dislike of, the appellant; his

motive to create these allegation to assist him in gaining custody of the child; and inconsistencies in his reporting of events to investigators and counselors. Consistent with this strategy, the nearly one-hour cross-examination by trial defense counsel established the potential bias of the father and other Government witnesses, as well as several instances where the child either failed to disclose abuse, or asserted that no abuse occurred. Trial defense counsel elicited testimony that the child at first denied any wrongdoing by the appellant on the Monday after the Memorial Day disclosure. He then elicited testimony about several different investigations that failed to substantiate misconduct due to the absence of any disclosures by the child during forensic interviews.

The appellant now contends his trial defense counsel were ineffective because they did not cross examine the child's father on certain statements made by the child and inconsistencies in the child's story. The appellant also asserted that counsel should have cross-examined the father and his girlfriend about an allegation that she had physically abused the child.[4]

Under the facts of this case, we find the appellant has failed to meet his burden to establish prejudice under the *Strickland* standard:

> [A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.

*Strickland*, 466 U.S. at 697. There is no reasonable probability that the result of the proceeding would have been different if this additional testimony was elicited.

The appellant also asserts that trial defense counsel were ineffective by not interviewing or calling a family friend as a fact witness. This noncommissioned officer asserts in a post-trial affidavit that she would have testified that her family and the appellant's were "always together," that the child was "never left alone" with the appellant, and that she never saw "anything inappropriate." In their declarations, both trial defense counsel explained how the introduction of this type of testimony into the case would have opened the door to adverse evidence about the appellant's general conduct towards the child while in Germany, including a photograph showing the appellant holding the child in one hand and making an offensive gesture with his middle finger with the other hand and another showing the appellant with several bottles of alcoholic beverages on a coffee table with the child in the room. In light of the photographs, this family friend's testimony would have been subject to challenge in that

---

[4] According to the summarized Article 32, UCMJ, testimony of various witnesses, the source of that allegation was a relative of the child's paternal grandmother who at one point lived with the child, his father and his father's girlfriend, and this family member is a diagnosed schizophrenic.

she either was not there when the photos were taken (and thus not "always together") or did not view the conduct in the photos to be inappropriate. In light of this, we find trial defense counsel's election not to pursue such testimony to be a reasonable trial strategy. Moreover, because this testimony would not have excluded the possibility that the appellant committed the offenses alleged at a time when the child was outside her presence and her credibility was otherwise subject to attack, we find that her testimony would not have likely resulted in a different outcome.

Therefore, we find the appellant failed to meet his heavy burden of showing that he was denied the effective assistance of counsel.

*Conclusion*

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of the appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the approved findings and sentence are **AFFIRMED**.

FOR THE COURT

STEVEN LUCAS
Clerk of the Court