# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
MULLIGAN, FEBBO, and LEVIN[1]
Appellate Military Judges

**UNITED STATES, Appellee**
v.
**Captain BRADY B. SIMPKINS**
**United States Army, Appellant**

ARMY 20160263

Headquarters, Fort Drum
S. Charles Neill, Military Judge (trial)
J. Harper Cook, Military Judge (*DuBay* Hearing)
Lieutenant Colonel John J. Merriam, Staff Judge Advocate

For Appellant:  Captain Matthew D. Bernstein, JA; William E. Cassara, Esquire (on brief).

For Appellee:  Lieutenant Colonel Eric K. Stafford, JA; Captain Marc Sawyer, JA; Captain Meredith M. Picard, JA (on brief).

22 August 2018

---------------------------------
MEMORANDUM OPINION
---------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

LEVIN, Judge:

An officer panel sitting as a general court-martial convicted appellant, contrary to his pleas, of three specifications of abusive sexual contact and one specification of maltreatment, in violation of Articles 120 and 93, Uniform Code of Military Justice, 10 U.S.C. §§ 920, 893 (2012) [UCMJ].  The panel sentenced appellant to a dismissal and confinement for 12 months.  The convening authority approved the findings and sentence as adjudged, but, at appellant's request, waived forfeitures of all pay and allowances for six months for the benefit of appellant's family.

---

[1] Judge Levin decided this case while on active duty.

Appellant's case is before this court for review under Article 66, UCMJ. Appellant raises two errors, neither of which merits relief.[2] First, appellant contends that the evidence was factually and legally insufficient to prove beyond a reasonable doubt that appellant was guilty of abusive sexual contact and maltreatment. Second, appellant alleges that his trial defense counsel were ineffective.

## FACTUAL BACKGROUND

In December 2014, appellant served as a physician's assistant in the same unit as Staff Sergeant (SSG) SD, who was a medic and non-commissioned officer-in-charge of a clinic section. Appellant was SSG SD's supervisor, and she was subject to appellant's orders.

The first abusive sexual contact occurred on or about 12 February 2015. While at the Joint Readiness and Training Center [JRTC] at Fort Polk, LA, appellant and SSG SD were in the medical tent during evening sick call. While playing cards with one another during some down time, appellant asked SSG SD, "[w]hat would you do if I tried to kiss you right now?" Appellant's question followed a series of inappropriate comments to SSG SD over the previous days, strongly suggesting that he found her attractive and was interested in pursuing a physical relationship with her. Staff Sergeant SD had affirmatively rejected appellant's verbal advancements. That night, after appellant's latest comment, he drew closer to SSG SD, and she locked her arm out with her hand to push against his chest. Despite her efforts to stop him, appellant grabbed SSG SD by both of her upper arms and leaned in to kiss her. She ducked, and appellant instead kissed her forehead. As SSG SD pulled away from appellant, he kissed both sides of her neck. Appellant also, as SSG SD described it to the panel, "reached around, and he started, I guess, touching -- grope -- I don't know the correct term -- touching my rear end -- my butt. . . ." Staff Sergeant SD then left the medical tent and went to a nightly First Sergeant's meeting.

The next morning, SSG SD told appellant that his conduct was inappropriate, unprofessional, and unwelcome. This admonishment did not stop appellant. That evening, again during sick call, appellant approached SSG SD from behind, as she was providing treatment to a soldier. While that soldier faced a direction away from SSG SD, appellant pinched SSG SD on her buttocks. Staff Sergeant SD managed to wait until she finished treating the soldier before responding to appellant's misconduct. Staff Sergeant SD responded by slapping appellant across the face and screaming at him.

---

[2] Pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982)*,* appellant personally asserts a number of issues. They merit neither discussion nor relief.

For his part, notwithstanding appellant's admission at trial that SSG SD had previously rejected his advances, appellant testified that he had in fact kissed SSG SD's neck on 12 February 2015. Appellant explained that he believed his conduct was consensual, even though he also acknowledged that SSG SD had tried to avoid his kiss. According to appellant, the manner in which SSG SD had rebuffed him somehow left him with the reasonable impression that she was not serious. The panel, apparently familiar with the fairly well-established concept that "'no' means 'no'," found otherwise.

Additional facts necessary to resolve the assignments of error are set forth below.

## LAW AND DISCUSSION

### A. Factual and Legal Sufficiency

Charge I and its three specifications charged appellant with three instances of abusive sexual contact. In Specification 1, appellant was convicted for touching SSG SD's buttocks with his hand without her consent on 12 February 2015. In Specification 2, appellant was convicted for touching SSG SD's buttocks without her consent on 13 February 2015. In Specification 3, appellant was convicted for kissing SSG SD on her face and neck without her consent on 12 February 2015.

Charge II and its specification charged appellant with maltreatment. Appellant was convicted for saying to SSG SD between 9 February 2015 and 13 February 2015, "Oh you're really pretty;" "It was kind of hot seeing you from that angle;" "What would you do if I kissed you;" and "I can't help thinking about how I could bend you over the litters in here," or words to that effect.

The test for factual sufficiency is "whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses" we are "convinced of the accused's guilt beyond a reasonable doubt." *United States v. Turner*, 25 M.J. 324, 325 (C.M.A. 1987).

Article 66(c), UCMJ, provides that this court may "weigh the evidence, judge the credibility of witnesses, and determine controverted questions of fact." When exercising this authority, this court does not give deference to the decisions of the trial court (such as a finding of guilty). *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002) (In assessing factual sufficiency, a court of criminal appeals gives "no deference to the decision of the trial court" except for the "admonition . . . to take into account the fact that the trial court saw and heard the witnesses.").

"We note the degree to which we 'recognize' or give deference to the trial court's ability to see and hear the witnesses will often depend on the degree to which the credibility of the witness is at issue." *United States v. Davis*, 75 M.J. 537, 546 (Army Ct. Crim. App. 2015), *aff'd on other grounds*, 76 M.J. 224 (C.A.A.F. 2017).

Recognizing that the panel saw and heard SSG SD's testimony, we credit her version of events. *See United States v. Crews*, ARMY 20130766, 2016 CCA LEXIS 127, at \*11(Army Ct. Crim. App. 29 Feb. 2016) (mem. op.) ("The deference given to the trial court's ability to see and hear the witnesses and evidence—or 'recogni[tion]' as phrased in Article 66, UCMJ—reflects an appreciation that much is lost when the testimony of live witnesses is converted into the plain text of a trial transcript."). Staff Sergeant SD testified that appellant, her supervisor, kissed her face and neck and touched her on her buttocks without her consent. Staff Sergeant SD's testimony was supported indirectly by the testimony of the soldier seeking aid during the 13 February 2015 sick call, who noticed that SSG SD, someone he had previously observed as "usually straightforward," seemed a little bit nervous while treating him. Staff Sergeant SD further explained to the panel that she had told appellant "no" on prior occasions.

Appellant admitted that he kissed SSG SD's neck, and it was clear from his own testimony that he did so with the intent to arouse or gratify his sexual desire. Appellant further acknowledged at trial that he had told SSG SD that she was pretty, though he denied making the other statements. Staff Sergeant SD testified that appellant had, in fact, made those statements. Such testimony, even if only presented by a single witness, is sufficient to lead to a conviction.

In *Weiler v. United States,* the Supreme Court noted:

> Our system of justice rests on the general assumption that the truth is not to be determined merely by the number of witnesses on each side of a controversy. In gauging the truth of conflicting evidence, a jury has no simple formulation of weights and measures upon which to rely. The touchstone is always credibility; the ultimate measure of testimonial worth is quality and not quantity. Triers of fact in our fact-finding tribunals are, with rare exceptions, free in the exercise of their honest judgment, to prefer the testimony of a single witness to that of many.

323 U.S.606, 608 (1945).

Furthermore, as this court set out in *United States v. Pleasant*, 71 M.J. 709 (Army Ct. Crim. App. 2012), the idea that a defendant, or an accused in the military context, testifies at his own peril is best summed up by the following:

> "Defendants in criminal trials are not obliged to testify. And a defendant who chooses to present a defense runs a substantial risk of bolstering the Government's case." *United States v. Bennett,* 848 F.2d 1134, 1139 (11th Cir.1988). "Most important, a statement by a defendant, if

4

> disbelieved by the jury, may be considered as substantive evidence of the defendant's guilt." *United States v. Brown,* 53 F.3d 312, 314 (11th Cir.1995). "By 'substantive' we mean evidence adduced for the purpose of proving a fact in issue as opposed to evidence given for the purpose of discrediting a witness (i.e., showing that he is unworthy of belief), or of corroborating his testimony." *Id.* This Circuit said that "when a defendant chooses to testify, he runs the risk that if disbelieved the jury might conclude the opposite of his testimony is true." *Id.* (citations omitted).

*Pleasant*, 71 M.J. at 713 (quoting *United States v. Williams,* 390 F.3d 1319 (11th Cir. 2004).

In light of the evidence presented at trial, we are convinced beyond a reasonable doubt of appellant's guilt as to abusive sexual contact with and maltreatment of SSG SD.

The test for legal sufficiency is "whether considering the evidence in the light most favorable to the prosecution, a reasonable fact finder could have found all the essential elements beyond a reasonable doubt." *United States v. Humphreys*, 57 M.J. 83, 94 (C.A.A.F. 2002) (citations and internal quotation marks omitted). In weighing questions of legal sufficiency, the court is "bound to draw every reasonable inference from the evidence of record in favor of the prosecution." *United States v. Barner*, 56 M.J. 131, 134 (C.A.A.F. 2001) (citations omitted). We have carefully considered the evidence and are satisfied that a reasonable factfinder could have found the essential elements of abusive sexual contact and maltreatment as alleged in this case beyond a reasonable doubt.

The evidence here is factually and legally sufficient to support the verdict.

*B. Ineffective Assistance of Counsel*

To establish ineffective assistance of counsel, "an appellant must demonstrate both (1) that his counsel's performance was deficient, and (2) that this deficiency resulted in prejudice." *United States v. Green,* 68 M.J. 360, 361-62 (C.A.A.F. 2010) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). In order to establish deficient performance, an appellant must establish that counsel's "representation amounted to incompetence under 'prevailing professional norms.'" *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (quoting *Strickland,* 466 U.S. at 690). That is, appellant must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Green*, 68 M.J. at 362 (citing *Strickland,* 466 U.S. at 698).

Appellant's claims of ineffectiveness, summarized here, are that trial defense counsel, Mr. MW and Captain (CPT) DC, were ineffective by: 1) failing to prepare for a Military Rule of Evidence [Mil. R. Evid.] 412 hearing; 2) failing to prepare appellant to testify at the Mil. R. Evid. 412 hearing; 3) failing to interview CPT SA and Specialist (SPC) VG; 4) failing to impeach SSG SD with text messages; 5) failing to introduce the text message correspondence as evidence; 6) failing to call numerous defense witnesses at trial; 7) failing to request a recess to consult with appellant prior to cross-examining SPC VG, a government rebuttal witness; 8) failing to prepare appellant to testify at trial; 9) failing to prepare appellant to be cross-examined about his prior General Officer Memorandum of Reprimand (GOMOR); and 10) failing to pursue a GOMOR as an alternative resolution to a court-martial.[3] Responsive declarations provided by both trial defense counsel pursuant to an order from this court address appellant's allegations. For the reasons that follow, appellant's assertion that his lawyers' performance amounted to ineffective assistance of counsel lacks merit.

---

[3] We issued an order in this case directing trial defense counsel to provide affidavits addressing aspects of the defense strategy, pretrial investigation and trial preparation, preparation of the client for his testimony, and trial performance. *United States v. Simpkins*, ARMY 20160263 (Army Ct. Crim. App. 8 Jun. 2018) (order). In reviewing these 10 summarized claims of ineffectiveness in light of the record, counsel's affidavits, and appellant's submission to this court, we conclude an evidentiary hearing is not warranted under *United States v. DuBay*, 17 U.S.C.M.A. 147, 37 C.M.R. 411 (1967).

Of the 10 issues summarized above, we reject items 1 and 2 because the appellant "allege[s] an error that would not result in relief even if any factual dispute were resolved in appellant's favor." *United States v. Ginn*, 47 M.J. 236, 248 (C.A.A.F. 1997). Simply, the defense prevailed on its R.C.M. 412 motion and was able to elicit through appellant's testimony conversations between appellant and SSG SD. Items 3 through 6 are claims generally not disputed by counsel, but explained as tactical decisions that we can examine under the lens of *Strickland*. We therefore can "proceed to decide the legal issue on the basis of those uncontroverted facts." *Id.* As to Item 7, defense counsel's failure to request a recess to confer with appellant before cross-examining the government's rebuttal witness, SPC VG, we reject appellant's contention on the basis that it "does not set forth specific facts but consists of speculative or conclusory observations." *Id.* Appellant asserts what he thinks his counsel may have been able to ask, but fails to establish how such a recess and would have changed the defense strategy or made a difference in the outcome of the trial. As for items 8 and 9, concerning preparation of appellant for his testimony, we find the record, as a whole, "compellingly demonstrate[s]" the improbability of the facts alleged by appellant. *Id.* As for item 10, the failure to pursue a GOMOR to resolve the matter, we find appellant's reasoning as this being an actual option to be speculative.

With respect to the Mil. R. Evid. 412 hearing, the defense team indicated that its goal in filing the notice was to present evidence to the panel of sexually charged conversations between appellant and SSG SD.  In fact, Mr. MW and CPT DC successfully persuaded the military judge to allow these conversations into evidence to support the defense theory of the case that appellant had a reasonable belief that SSG SD consented to his actions.  Regardless of whether counsel prepared for the hearing, there was no prejudice.  Because there was no prejudice, there can be no ineffective assistance of counsel as to these allegations.

We next address appellant's claim that defense counsel failed to interview two potential witnesses, CPT SA and SPC VG.  In their declarations, both trial defense counsel explained how appellant advised them that neither witness had any knowledge of the charged offenses.  Additionally, defense counsel were concerned that the interviews themselves could lead to the revelation of damaging information against appellant.  Previously, CPT DC interviewed a potential witness identified by appellant.  That soldier, a First Sergeant, corroborated that SSG SD was upset after she left the medical tent on 12 February 2015 to attend the First Sergeant's meeting, undermining appellant's defense theory.  Out of concern that additional interviews might lead to the exposure of more harmful evidence, defense counsel opted not to question CPT SA or SPC VG prior to trial.

In light of this, we find trial defense counsels' election not to pursue such interviews to be a reasonable trial strategy.  Moreover, because there is no evidence that their testimony would have excluded the possibility that the appellant committed the offenses alleged, we find that their testimony would not have likely resulted in a different outcome.  Therefore, we find the appellant failed to meet his heavy burden of showing that he was denied the effective assistance of counsel.

Next, appellant complains about his counsels' failure to use text messages between appellant and SSG SD at trial.  As an appellate court, we will not second-guess reasonable, albeit unsuccessful, tactical decisions by trial defense counsel.  See *United States v. Sanders*, 37 M.J. 116, 118–19 (C.M.A. 1993).  As explained in his affidavit, Mr. MW believed that, while the text messages may have undermined SSG SD's timeline to a small extent, they demonstrated that SSG SD did not want to be around appellant.  These messages gave the impression to both Mr. MW and CPT DC that SSG SD wanted to avoid appellant following the alleged misconduct.

Next, appellant complains that counsel failed to call numerous witnesses to testify at trial who would have testified that they had seen nothing.[4]  The defense

---

[4] Appellant has not provided affidavits from the witnesses of what they would have testified to on his behalf.  As this court has noted before, "when claiming ineffective assistance of counsel for failure to present the testimony of a particular witness, an appellant must specifically allege the precise substance of the witness' missing

(continued . . .)

theory was that certain interactions between appellant and SSG SD had occurred, but that appellant believed them to be consensual. As Mr. MW stated in his sworn declaration, "I explained to [appellant] that calling random soldiers to say that they saw nothing, [sic] made the defense look foolish. If their only purpose was to say, 'I was not there' and 'I witnessed nothing,' then they are not relevant. . . . When the defense calls witnesses, they should be highly relevant and serve a specific purpose. Otherwise, the defense looks like they are grasping at straws." In light of this explanation, appellant has failed to overcome the strong presumption that counsel's performance was within the wide range of reasonable professional assistance. Without deficient performance, we cannot find ineffective assistance of counsel.

As for the testimony of SPC VG, defense counsels' decision not to request a recess to consult with appellant prior to cross-examining this witness is a strategic decision that falls well within the sole responsibility of counsel. *See United States v. Dobrava*, 64 M.J. 503. 505 (Army Ct. Crim. App. 2006) (trial defense counsel are responsible for making numerous tactical decisions). Even were we to find somehow that counsels' decision was deficient, appellant has not identified any prejudice that resulted from that decision.

Next, we find appellant's claims that he was not prepared to testify at trial are without merit. As a starting point, we reject appellant's characterization that he was extensively cross-examined about a prior GOMOR. The issue of his prior receipt of a GOMOR never came before members. Instead, he was simply asked by the government on cross-examination whether he lied during a previous investigation. We also note appellant does not aver in his statement to this court that he would have changed his decision to testify if he knew he would have been asked about a misrepresentation in a prior investigation.

According to the sworn declarations of both Mr. MW and CPT DC, Mr. MW prepared appellant for his direct examination as well as cross-examination. Mr. MW explained to appellant that he would likely be questioned about having previously lied under oath, conduct which eventually resulted in the issuance of a GOMOR. When advised that it was his decision whether to testify, appellant told his counsel that he still wished to testify. Given the defense theory of the case–which we find

---

(. . . continued)
testimony." *United States v. Clemente*, 51 M.J. 547, 550-51 (Army Ct. Crim. App. 1999) (citing *United States Russell*, 48 M.J. 139, 141 (C.A.A.F. 1998); *United States v. Moulton*, 47 M.J. 227, 229 (C.A.A.F. 1997), cert. denied, 522 U.S. 1114 (1998)). To support a claim for ineffective assistance of counsel, facts must be included in a statement by someone with personal knowledge that is a sworn affidavit or a declaration made under penalty of perjury for this court to consider the statement on appeal. *United States v. Cade*, 75 M.J. 923, 929 (Army Ct. Crim. App. 2016), *pet. den.*, 76 M.J. 133 (C.A.A.F. 2017).

reasonable upon review of the record as a whole–we do not find counsel's performance in the preparation or execution of appellant's testimony to be deficient.

Finally, appellant asserts without support that SSG SD preferred the issuance of a GOMOR. To that end, appellant insists, Mr. MW and CPT DC should have pursued a GOMOR and "attempted to resolve the issue administratively." We find this claim lacking in merit when viewed with the whole record. Appellant provides no evidence that a GOMOR would have been an acceptable outcome for the convening authority. In fact, prior to trial, appellant submitted a request to resign in lieu of court-martial. Defense counsel sought a continuance at trial, which was denied, because the resignation request was still pending resolution at the time of trial. Given the resignation request and the fact the convening authority referred charges in this case, we find appellant's last claim to be meritless.

Based on the facts of this case, we hold that appellant has failed to establish ineffective assistance of counsel.

## CONCLUSION

The findings of guilty and the sentence are AFFIRMED.

Senior Judge MULLIGAN and Judge FEBBO concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court